## Sam House v. The State.

### No. 3261. Decided November 18, 1914.

#### 1.—Murder—Statement to Jury—Statutes Construed.

Under article 717, Revised Code Criminal Procedure, the refusal of the court below to permit defendant to make a statement to the jury as authorized thereby of his side of the case as to the testimony which he would introduce is reversible error, and this although he had introduced two character witnesses. Distinguishing Owen v. State, 52 Texas Crim. Rep., 65.

#### 2.—Same—Evidence—Other Transactions—Motive.

Upon trial of murder, where the evidence disclosed that the difficulty grew out of the fact that both defendant and deceased paid court to a certain young lady and that defendant had succeeded in obtaining her consent to marry him, he should have been permitted to show by his witness that deceased came to the witness some time prior to the difficulty and wanted the witness to pay his attention to said young lady to prevent the defendant from going with her and declared that he intended to stop defendant from going with her if he, deceased, was big enough, etc., all of which was communicated to defendant; it also being shown that deceased with three or four other young men had beaten up the defendant together and shortly thereafter followed him around seeking an opportunity to assault him, etc., just before the homicide; the court assigning a different motive to the homicide.

#### 3.—Same—Evidence—Other Transactions—General Reputation.

Upon trial of murder, where the county attorney was permitted to go into all the facts and details of a little trouble that occurred between a road overseer and the defendant for refusing to work on the public road, the same was going too far under defendant's request for a suspended sentence to impeach defendant's general reputation. Following Williams v. State, recently decided.

#### 4.—Same—Manslaughter—Charge of Court—Provocation—Third Parties.

Where, upon trial of murder, the evidence raised the issue of manslaughter, and the court instructed the jury in his charge on manslaughter that the provocation must arise at the time of the commission of the offense and that the passion is not the result of a former provocation, there being testimony as to former provocation, yet in a subsequent paragraph of his charge instructed the jury to consider all the facts and circumstances in evidence in regard to the adequacy of the provocation, the same was sufficient, except that the court in his charge ought to have applied the law to acts of deceased and those acting with him under the evidence. Davidson, Judge, dissenting.

#### 5.—Same—Intent to Kill—Charge of Court—Deadly Weapon.

Where, upon trial of murder, the defendant swore positively that he did not intend to kill the deceased and that it was one of those sudden impulses

that grew out of antecedent circumstances, and that the weapon used was not per se a deadly weapon, the court should have instructed the jury pertinently that if there was no intent to kill, they should acquit the defendant of any degree of homicide; and this although the court submitted article 717, White's Ann. Penal Code, but omitted to submit article 719 of said Code. Following Fitch v. State, 37 Texas Crim. Rep., 500, and other cases.

**6.—Same—Standpoint of Defendant—Charge of Court—Manslaughter.**

Where, upon trial of murder, the evidence showed antecedent threats and menaces just prior to the homicide, the court in his charge on manslaughter should have instructed the jury to look at these matters from the standpoint of defendant.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Allen Beaddle* and *Williams & Williams,* for appellant.—On question of intent to kill: Shaw v. State, 34 Texas Crim. Rep., 435, and cases cited in opinion.

On question of statement by defendant relied upon and facts expected to be proven: Thompson v. State, 30 Texas Crim. App., 325, and cases stated in opinion.

On question of provocation: Byrd v. State, 39 Texas Crim. Rep., 609; Garcia v. State, 70 Texas Crim. Rep., 485, 156 S. W. Rep., 939.

On question of charge on manslaughter and standpoint of defendant: Eanes v. State, 10 Texas Crim. App., 421; Scott v. State, 49 Texas Crim. Rep., 386.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at ten years confinement in the penitentiary.

The evidence shows, substantially, that appellant and deceased were young men living in the same section of the county, and had been friends. Prior to the trouble which resulted in the death of the deceased a young lady came to the neighborhood and taught school. Defendant and deceased became rivals for her affection, appellant winning in the race. This angered the deceased, and was the cause of ill-will on the part of the deceased. About a week or ten days before the fatal trouble appellant was invited to a social gathering where deceased and the Irwin boys attended. The evidence tends to show that he was invited to attend with a view of having trouble that did actually occur at the social function in which the Irwin boys gave appellant a pretty severe beating. It was an issue on the trial whether the deceased was in this as a participant. Appellant's testimony shows he was, and that when appellant had one of the Irwin boys down deceased caught him by the

hair and pulled him off to the end that the Irwin boys might have the advantage, which they seem to have secured after this act on the part of deceased. The State sought to deny this. This made an issue on this particular question. A few days subsequently appellant and his brother went to the town of Moody at the request or command of their father to buy a plow, have some blacksmith work done and purchase an ax handle. While waiting for the work at the blacksmith shop deceased and a friend drove into town. The inference is fully and fairly deducible that neither deceased nor appellant expected to meet each other in town. About 12 o'clock appellant and his brother and another young man were talking. The deceased and his friend passed them. Deceased asked him how he felt by now. The wounds inflicted by the Irwin boys and deceased, if he was engaged in it, had not healed; he was still suffering from that beating. He says that when deceased spoke to him, using the language mentioned, he did it in a sneering way, and that he immediately followed and struck him twice with the ax handle on the head. Some of the witnesses say that he struck three times, once after deceased fell to the sidewalk. There is a great deal of testimony introduced in regard to this particular question as to whether two or three licks were struck, and whether deceased was down when one of the licks was struck. Those are matters about which the testimony raised an issue. Appellant said that he was angered and outraged at the previous beating given him, and knowing that deceased was engaged in it, that the remark made to him by deceased as he passed so outraged him that he proceeded to assault him. It is agreed that the ax handle was three feet long and weighed one pound and nine ounces. This is a sufficient statement of the case, we think, to bring in review the matters thought necessary to be discussed.

The first bill of exceptions was reserved to the refusal of the court to permit appellant to make a statement to the jury as authorized by the statute of his side of the case, as to the testimony which would be introduced. The bill recites the following: After a statement by the attorneys to the effect above mentioned, the court stated: "It is not customary and that has not been the practice. Mr. Williams: But it is the statute. The court: I do not feel like doing that, it is not practiced anywhere that I know of. Mr. McNamara: This is not the time for it even if we followed that rule. Mr. Williams: We put on two character witnesses. I am not trying to do anything unusual. It is the plain letter of the statute. The court: I will overrule the plain letter of the statute. You will have plenty of time to argue the case when the evidence is in." This bill is signed without qualification. Among other things the statute provides that the indictment shall be read to the jury by the district or county attorney, special pleas, if any, shall be read by defendant's counsel, and if the plea of not guilty is relied upon, it shall be stated. That counsel prosecuting for the State shall inform the jury as to the nature of the accusation and the facts which are expected to be shown by the State. The testimony on the part of the State shall be introduced. The nature of the defenses relied upon

shall be stated by counsel for the defendant, and the facts expected to be proved in their support. The testimony on the part of the defendant shall be introduced, and rebutting testimony may be offered on the part of the State and the defendant. Just what effect to give this statute with reference to these matters has not been definitely settled. It has been discussed slightly in Holsey v. State, 24 Texas Crim. App., 35. In that case it was held that where the prosecution had failed to make a statement to the jury of the State's case it was not reversible unless it was made to reasonably appear that injury had been done the accused by such failure. In Owens v. State, 52 Texas Crim. Rep., 65, at pages 67-68, the question was again discussed. In that case as in this the accused requested the court that he be allowed to state to the jury, in substance, his defenses in order that the jury might be informed of the nature, character and extent of it. That was out of the due order of the trial in that case as provided in the statute, article 717 of the present Revised Code of Criminal Procedure, but in this particular case the bill shows that appellant insisted upon his right to make a statement to the jury as authorized by the statute at the proper time, that is, after the State had finished its testimony. It was stated in the Owens case, supra, there was nothing in the bill to make it appear that in the due order of the proceedings, appellant offered to make the statement at the time authorized by the statute, or that the court refused to hear a statement or permit it to go to the jury as provided by the statute. The court then says: "If it had been offered at the proper time we would presume, in the absence of the contrary showing, that the court would have permitted the statement to have been made. As the bill presents the matter, we do not feel called upon to decide what would be the effect of a refusal at the proper time to hear such statement, but in passing, however, we would state wherever the statute provides a matter that may redound to the benefit of the accused on his trial, or that is authorized in his behalf, such provision of the statute should be complied with and enforced. Whatever the courts may think about such proceedings the Legislature has so provided, and the safe rule is to follow statutory enactments. To say the least of it, it will avoid questions for decision upon appeal without any necessity for such questions." By the bill it is shown that the appellant insisted upon it, we think, in ample time and in the due order of trial as required by the statute. There is but one qualification to be made to the statement, and that is two witnesses for the defendant had been introduced as to his general reputation, or what the bill calls character witnesses. We think this does not interfere with the right of appellant to make *a statement as to the facts of the case.* He insisted upon it, demanded it, reserved bill of exceptions because he was not awarded the plain statutory privilege, or right. We suppose the statute meant something when it authorized the defendant to make a statement of his case to the jury before introducing his evidence, otherwise the Legislature would not have enacted it. It was enacted to be observed and not ignored. The court says: "I will overrule the plain letter of the statute. You will have

plenty of time to argue the case when the evidence is in." The court should not have "*overruled the plain letter of the statute*," but should have *enforced "the plain letter of the statute."* Statutes are made for enforcement and to be observed and not to be overridden and nullified. The Legislature must have thought that it was worth while to enact this statute, and that it was according the accused a right to be heard as to the nature of his evidence to be introduced before it was introduced. This is not a case of a failure to ask or a waiver of his right, but rather a strenuous insistence that his rights be observed and be accorded him. Whenever this provision is sought to be used by defendant at proper time the court should permit it.

The second bill is very lengthy and we think not necessary to be repeated. It may be stated from the contents of this bill that trouble had arisen between deceased and appellant with reference to the young lady whose affections the appellant had succeeded in obtaining to the extent that he had become engaged to marry her. This seems to have angered the deceased and been the cause, at least the initial cause, of subsequent troubles between them. This bill shows in this connection that he proposed to show by the witness Myers that deceased came to him in July, 1913, and wanted him to pay attention to the young lady so as to prevent appellant from going with her; and he further stated to Myers that he, deceased, intended to stop appellant from going with her if he was big enough and he thought he was. The court stated that this was not a threat communicated or uncommunicated. Appellant's counsel stated it was admissible for the purpose of showing motives and feelings of deceased against defendant. The court then sustained the objection, whereupon appellant took the further exception: "We except and contend that it is admissible for the reasons stated, and that it is prejudicial error for the court to reject the testimony." It was further stated by counsel at the time that they could prove these facts by this witness if he was permitted to testify. It was then offered to be proved by Myers; that deceased about seven months before the homicide tried to persuade the witness, who was then a young single man, to pay attention to the young lady in question, and offered him his horse and buggy for that purpose at any time he might desire to use it, and in this connection stated to the witness that he was going to stop defendant from courting and paying attention to the young lady if he was big enough to do so and he thought he was, and that this conversation was communicated to defendant prior to the homicide. Also in this connection appellant calls the court's attention to the evidence in the case showing that both young men, defendant and deceased, were in love with the young lady in question, and both had courted her and made love to her, and defendant had proposed marriage and had been accepted. The deceased had substantially been discarded. Appellant's contention, and he so testifies, was that some weeks before the homicide deceased, with three or four young men, invited him to a singing one night where he was without friends, and had all jumped on him and beat him severely, and had thereafter stated that defendant had only

gotten one beating and that he had to take another one still by each one of the boys involved. Defendant further testified that on the day of the homicide deceased, in company with another, was following him around the town of Moody and as he thought and believed was seeking an opportunity to beat him; that he avoided him several times, but finally just before the homicide deceased passed him and made the remark, "How are you feeling by this time"; that the remark was made with a sneer, and defendant so construed it, and that it had reference to his having been previously beaten and was intended as an insulting remark, and that he followed and immediately struck deceased with the ax handle. The State contended that deceased had not assisted in giving appellant the beating at the singing function, and that any talk or threats made by the deceased grew out of some alleged talk that defendant had made about deceased's sister; and the State's theory was also that deceased was not even mad at the defendant, and at the time of the difficulty was his friend, and pulled the other boys off of him, and had taken no part in the fight. The defendant's theory was that deceased was mad at him, and the real cause of his madness was jealousy with reference to the young lady, in the race for whose affections they had been engaged and in which race the appellant had come off victorious. In this condition appellant offered the testimony set out by the witness Myers. The State objected without assigning any reason, the defendant contending that it was admissible for the purpose of showing motives and feelings of deceased towards defendant and for general purposes of the case. We are of opinion that appellant's contention is correct. It was his side of the case. The State had introduced evidence of motives against the defendant, that he had made some remarks about the sister of deceased, and about which he and deceased had had some talk and which had been denied by appellant, and he thought deceased had accepted the statement as true, but the defendant proposed to meet all this testimony by showing the real reason of the trouble—because he, defendant, had won the affections of the young lady in question, and deceased had become mad about it and jealous, and also to explain his reasons for believing that deceased was engaged in these difficulties and troubles with the Irwin boys and seeking to induce the other young men to use his horse and buggy and interfere between appellant and his young lady sweetheart. We think this testimony clearly admissible and see no reason why it should not have gone to the jury. It would have put a different light on the testimony in favor of appellant had the jury believed it, and would have been an inducing cause for them to believe appellant's side, that deceased was engaged in these troubles against him.

Another bill recites that the county attorney, cross-examining the appellant, asked him if he had not had a fight with a road overseer named Edgar Holt, and if he had not drawn a stick of cord wood on him. Appellant denied this; and further he asked him if said road overseer had not warned him to work the road and if he had not refused to go. Some of this appellant denied. He then asked appellant if he

had not paid a fine for not working the road. Appellant answered, "Yes, I paid a fine for not working the road. I paid my road tax." The State then introduced as a witness the road overseer and went into quite a lengthy detail of the facts, conversations and circumstances and details of what occurred between himself and the defendant when they were talking about appellant not working the road. Under the case of Williamson v. State, 74 Texas Crim. Rep., 289, in an opinion by Judge Harper, it was held where the defendant puts in a request for suspended sentence, that the State may inquire if he had been arrested or prosecuted for any of these small offenses that would not be available to impeach his general reputation otherwise. Without going into a discussion of that question here, we are of opinion that this bill of exception shows error in that it permitted the county attorney to go into all the facts and details of the little trouble that occurred between the road overseer and defendant as if defendant was then on trial under a plea of not guilty in a prosecution for not working the road. The State, under the authority cited, might prove the fact that he had paid a fine or had been arrested for it or convicted for it, as the case may be, but this would not authorize the State to turn aside and go into all the details of that transaction in the trial of this case. Under all the authorities this would not be permissible.

The charge of the court is vigorously assailed from two standpoints, first, inaccuracies in regard to the charge on manslaughter, and, second, on intent. The court in his charge gave the following:

"The provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation.

"The act must be directly caused by the passion arising out of the provocation, if any, at the time of the killing. It is not enough that the mind is merely agitated by the passion arising from some other provocation, or a provocation given by some person or persons other than the party killed."

Many objections were urged to this charge. The provocation arising at the time could hardly be sufficient to be considered adequate cause, but taken in the light of preceding circumstances and troubles it was sufficient and required a charge on manslaughter which the court gave, submitting that issue. The facts show, from the defendant's standpoint, that there had been a series of provocations and insults and threats and abuses from deceased towards appellant, running back a period of some months. Ten days before the homicide deceased and some other young men had committed an assault upon and gave appellant a very severe beating. On the day of the homicide deceased and another young man, whom appellant regarded as one of deceased's friends and belonging to the same crowd, were following appellant around the town of Moody seeking a meeting for the purpose of bringing on another difficulty with him, as he believed, in harmony with the threats he had heard as coming from deceased against him. Deceased passed and insultingly referred to the former beating he had gotten, etc. This is appellant's statement of the facts and circumstances bearing upon the manslaughter

issue in part at least. This was defendant's side of it, and in view of these matters the court should have instructed the jury without limiting the provocation to the time of the difficulty and also should have included these provocations given by other persons. They all occurred, and under defendant's theory deceased was a participant in those transactions, and necessarily involved in them, and in his mind associated with the same. Whatever the court may think of the testimony, this was defendant's side of it, and he had a right to have the jury pass on the law and the case from his standpoint. Therefore, we are of opinion that the court erred in this portion of his charge, because defendant had the right to have the manslaughter question looked at in the light of all these matters, and under these provocations given by other parties and in connection with it. This charge of the court eliminated all those matters. We understand the rule to be that where there is evidence that some other person or persons acted in conjunction with deceased in giving provocations, it is error for the court to prevent a consideration by the jury of the provocations given by some other than the party killed. See Byrd .v. State, 39 Texas Crim. Rep., 609; Garcia v. State, 70 Texas Crim. Rep., 485, 156 S. W. Rep., 939. While the other parties, except one, were not present at the time of the difficulty, yet the present difficulty, the one resulting in the homicide, can be looked to through these antecedent circumstances and they could not be properly looked at with the other parties eliminated. In other words, the court was in error in limiting all those matters to the provocation to deceased alone and at the time of the homicide, for the facts show in the previous difficulties other parties were acting with him. It was an issue that other parties were engaged in the previous troubles, and the court should have properly so charged the jury.

We desire to call the court's attention here to the fact that there was a failure to instruct the jury to view these facts and circumstances from the standpoint of the defendant. It was a sharp issue made by the State as against the defendant's theory, and defendant's theory against that of the State with reference to all these matters. Therefore, we think it became necessary, under the peculiar circumstances of this case, for the jury's attention to be called to the fact that they should look at these matters from the standpoint of the defendant as they were presented to his mind, as inducing cause to do what he did.

There is another very serious question in the case involving intent. Appellant swore positively that he did not intend to kill deceased, had no idea of killing him, and that it was one of those sudden impulses that grew out of the environments already detailed and so presented to his mind that it enraged him at the time, and he struck with the ax handle. That it resulted disastrously and in the death of the deceased it is true, but appellant swears he did not intend to kill him, and the evidence is uncontroverted that it was not a deadly weapon per se and, therefore, the intent became a very serious question in the case. The court should have instructed the jury pertinently that if there was no intent to kill, they should acquit of any degree of homicide. The

court did submit the theory of intent to the jury of presumption from the use of a weapon under article 717 of White's Annotated Penal Code. That article reads this way: "The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." The court should also have given article 719 of White's Annotated Penal Code; it reads thus: "Where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide unless it appear that there was an intention to kill, but the party from whose act the death resulted may be prosecuted for and convicted of any grade of assault and battery." The court's charge upon this subject is predicated upon the presumption arising from the use of the weapon. If the intention was not to kill, it is not to be presumed that he intended to kill, unless that intention evidently appears. This is statutory. Appellant asked a charge submitting the question of intent from a broader standpoint; that if he did not intend to kill, under the circumstances of this case, then the jury would acquit of homicide. This question was decided, as contended for by appellant, in Fitch v. State, 37 Texas Crim. Rep., 500; Danforth v. State, 44 Texas Crim. Rep., 105; Shaw v. State, 34 Texas Crim. Rep., 435; Patterson v. State, 60 S. W. Rep., 557. Judge Hurt wrote the opinion in the Fitch case. In that case the facts show "the stick used was about three and one-half or four feet long and two or two and one-half inches in diameter and was part of a seasoned rail and would weigh three or four pounds. When defendant stooped to pick it up only about a foot of it was visible, the rest was in the kiln. Richey was unconscious from the time he was struck. He lived about an hour and a half." In this case the homicide occurred under somewhat similar circumstances, except in the Fitch case the instrument or weapon used was much larger and heavier than that used by appellant. The one used by appellant was an ax handle three feet long, weighing one pound and nine ounces. Quoting from Judge Hurt's opinion, we find this language: "If the instrument or means used be not likely to produce death, we are not permitted to presume that death was designed, unless from the manner in which it was used, the intent to kill evidently appears. But let us suppose that the instrument be one likely to produce death, the jury may infer therefrom the intention to kill; but still it is a question for the jury as to whether the intention to kill existed or not. It does not follow that, in every killing or homicide committed with an instrument likely to produce death, the intention to kill existed. The fact of the intention to kill must be established. This can be done, however, by the character of the instrument or weapon used. If it is likely to produce death, the jury would be warranted in finding an intention to kill; but, as a matter of law, this is not the case. It is still a question of fact for the jury. The instrument used in this case was a stick of wood

or piece of rail, about three or four feet long and about two inches in diameter, and weighing three or four pounds. Now, can the court assume that it was a deadly weapon, and from that assumption infer ° absolutely the intention to kill, and withhold that question from the jury? We think not. We are of opinion that the court should have submitted this question to the jury. This was not done. Counsel for appellant requested instructions bearing upon this question, which were refused." Judge Hurt, in another part of the opinion, uses this language: "Under this state of case, to constitute murder or manslaughter, must the party intend to kill? We answer that he must." Patterson v. State, and other cases cited are in direct line and consonance with the Fitch case. The court, we think, should not have confined the intent to presumption in regard to the killing, but should have instructed the jury plainly, independent of the statutes quoted, that before they would be warranted to find appellant guilty of the homicide under the circumstances of this case, they must find that he intended to kill.

For the errors indicated the judgment is reversed and the cause remanded.

The majority are of opinion and hold the charge on manslaughter as given is sufficient inasmuch as the court in a subsequent paragraph instructed the jury to consider all the facts and circumstances in evidence in regard to the adequacy of the provocation, except that he ought in said charge to have applied the law to acts of deceased and those acting with them.

*Reversed and remanded.*