HENRY SAMPSON v. THE STATE.

No. 3850.    Decided December 1, 1915.

Rehearing denied January 5, 1916.

1.—Murder—Evidence—Written Confession—Questions and Answers.

Where the written confession of the defendant was introduced in evidence and complied in all respects to the law and was shown to have been voluntarily made, and the questions that were asked the defendant and answers thereto were not stated in the record, there was no reversible error.

2.—Same—Evidence—Oral Confessions—Arrest—Fruits of Crime.

Where the alleged oral confession led to the finding of the fruits of the crime, there was no error in admitting them in evidence, although defendant was under arrest.

3.—Same—Charge of Court—Principals—Fundamental Error.

Where appellant in his motion for new trial for the first time attacked the court's charge because he had submitted the law of principals, and there was no fundamental error, and it appeared from the evidence that the issue of principals arose from the evidence, and the court correctly charged thereon, there was no reversible error.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Heidingsfelders*, for appellant.

*C. C. McDonald*, Assistant Attorney General, *John H. Crooker*, District Attorney, *E. T. Branch*, and *T. J. Harris*, for the State.—On question of confessions: Oliver v. State, 159 S. W. Rep., 240; Kelly v. State, 61 Texas Crim. Rep., 663.

On question of principals: Miller v. State, 15 Texas Crim. App., 125; Bass v. State, 59 Texas Crim. Rep., 186; Espinoza v. State, 73

Texas Crim. Rep., 237, 165 S. W. Rep., 208; Coulter v. State, 162 S. W. Rep., 885; Thompson v. State, 71 Texas Crim. Rep., 514, 163 S. W. Rep., 973.

HARPER, JUDGE.—Appellant was awarded the death penalty by the jury for killing Charles Bourgeois. '

The indictment sets out various ways by which the killing occurred. These seem to have been supported by the testimony. There is but one bill of exceptions in the record. This was reserved to the ruling of the court permitting the written confession of appellant to be introduced before the jury. The confession on its face is in conformity with the law. The objection urged was that it was not a voluntary statement freely made under circumstances that would admit it in evidence, that proper warning had not been given, and that the statement was made in answer to questions propounded by several persons at the time, etc. The judge qualifies this bill by stating that the grounds of objection are not certified to as true, but only that such objections were made, and the court is referred to the statement of facts, which shows that a proper warning was given and the confession was shown to be voluntary and was corroborated. This bill shows that the confession was made to the chief of police. There were quite a number of parties present at the time it was made, among them were Mr. Culmore, Frank McCurdy, Judge Crooker, and Officers Binford and Hill, and probably others, and it is shown some questions were asked. Testifying in answer to the question, "Did you ask any question?" the witness stated, "I asked him several questions, as he stated that he was going to make a confession and make a clean breast of it all, and Judge Crooker asked him some questions; Mr. Wharton Bates asked him some questions, and I believe Officer Binford asked him some questions." Then the question was asked, "Where was he and under what circumstances was the confession made?" The answer is, "He was in the city jail," and witness was told by Mr. Bates, whom he thought was appellant's lawyer, that defendant wanted to make a confession. He was brought down from upstairs, where he was locked up, into the office in the city jail, and in the presence of the persons named made the statement. The statement was written down in shorthand by a stenographer and transcribed by him and read over to appellant and he signed it. Witness says, "I warned him the warning at the beginning of the written confession. He was under arrest at the time and in my custody as chief of police." What these questions that were asked the defendant are is not stated. We are not informed as to what they were, or what effect, if any, they might have had. We suppose in a general way that they were in reference to what he did state in the confession. We are of opinion without something to show that the questions asked and answers were illegitimate and improper or tended in some way to affect the fairness and voluntariness of the confession, that we would be unable to hold that there would have been injury. The statute requires that

such confession must be voluntary, and, of course, we would understand that the questions propounded and the answers elicited to the questions should not lead the defendant to make any particular statement that might be injurious to him. Those statements must be voluntary, but before we can decide that question we must be informed as to what these matters were. They may have been incidental, of no moment, and in no way really having any effect upon the confession itself. There is also in the record testimony that appellant had made a verbal confession to one of the officers while under arrest, which, in a general way, seems to have been about as explicit and full as the one in writing as to the warning given and facts stated. The verbal confession was made without warning, but in accordance with the confession the officer found fruits of the crime, and at the point indicated by appellant in his confession. The deceased had a butcher shop. Appellant and another party by agreement went to the place of deceased and waited until he began closing his shop for the night, and for the purpose of killing and robbing him. To throw the deceased off his guard they made a purchase of some meat; in fact, made two purchases, and at the opportune moment when deceased had his back turned to them appellant struck him on the back of the head with an iron bar which weighed several pounds. This knocked him to the floor. The other party then took the iron pipe and crushed his skull, fearing that he might not have been killed by the first blow. The appellant and his associate then took what money they could find and a pistol and watch, and some other things, and spread kerosene oil over the body and different places in the room and set fire to the house. The house burned, as well as the remains of the deceased. The effect of the statements or confessions, verbal and written, are practically the same, that is substantially so. To the verbal confession no objection was urged, and under the statute none could be urged inasmuch as the statements in the verbal confession of appellant pointed out and designated where this stolen property could be found and was found in accordance with the statement. The watch in one place, and the pistol in another, etc. Under all these circumstances we are of opinion that the admission of the written confession does not show any reversible error.

Appellant in his motion for new trial for the first time attacks the court's charge because the law of principals, he says, ought not to have been given. This would come too late unless it was so related to the case it would constitute fundamental error; but in this particular case we do not think there was any error. The evidence shows that the two parties acted together; they agreed to go there to do just what they did, and accomplished their purpose. Appellant asked special instructions to the jury if they found the other party did the killing they would acquit appellant. This charge was given with the further statement or qualification in writing by the court' to the jury, that unless they should find that appellant acted as a principal in the killing. The whole case revolves around the proposition that these two parties, defendant and Shelton, went to the butcher shop for the purpose of

killing and robbing deceased and accomplished that purpose; that they divided the proceeds between themselves, appellant getting half the money and Shelton getting the other half. Taking this record as it stands, we are of opinion that no error is shown which would require a reversal of the judgment either from any single proposition presented or from all of them considered together, or from the whole record.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

[Rehearing denied January 5, 1916.—Reporter.]