DUGAN v. STATE. (No. 4823.)

(Court of Criminal Appeals of Texas. Dec. 19, 1917.)

1. CRIMINAL LAW ☞704—RIGHT TO MAKE OPENING STATEMENT.

Under Code Cr. Proc. 1911, art. 717, subd. 5, providing that the nature of the defense relied upon shall be stated by counsel for the defendant and what are the facts expected to be proved in their support, there rests in the court a judicial discretion to control the opening statement and limit it to its proper scope; but when accused in a timely manner seeks to avail himself of the privilege of making an opening statement, and does not seek to abuse the privilege by commenting upon improper or inadmissible facts, converting it into argument or otherwise misusing such privilege, it should be accorded, and its denial cannot be sanctioned.

2. CRIMINAL LAW ☞704—RIGHT TO MAKE OPENING STATEMENT.

That defendant's motion for leave to make an opening statement was accompanied by a written memorandum outlining his proposed statement did not militate against his right to make it, but, on the contrary, was appropriate in advising the trial court of its scope.

3. HOMICIDE ☞269—QUESTIONS FOR JURY—INTENT AND CHARACTER OF WEAPON USED—"DEADLY WEAPON."

Under Pen. Code 1911, art. 1147, providing that the instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the offender, and that, if the instrument be not likely to produce death, it is not to be presumed that death was designed, unless, from the manner in which it was used, such intention evidently appears, a pocketknife, with which defendant stabbed deceased, was not per se a "deadly weapon," and its character as such, and the intent of accused in using it, were questions of fact.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deadly Weapon.]

4. HOMICIDE ☞307(2) — INSTRUCTIONS — AGGRAVATED ASSAULT.

Where a homicide apparently took place in a sudden quarrel, and defendant claimed that he was defending his life against three assailants, and deceased was stabbed in two places with a pocketknife, one wound not being fatal and the other severing an artery, and there was evidence that both wounds were made from a position facing deceased, whom defendant claimed was attacking him with a chair, the court should have charged on the law of aggravated assault.

5. WITNESSES ☞372(2) — IMPEACHMENT OF WITNESS—CROSS-EXAMINATION.

Cross-examination of an important witness for defendant, to show that he had tried to get two of the state's witnesses drunk and thereby to discredit them, was within the rule permitting cross-examination of an adverse witness to show his bias and mental attitude and interest, and was not a violation of the rule excluding collateral matters not shown to have taken place with the knowledge of defendant.

6. CRIMINAL LAW ☞404(4)—DEMONSTRATIVE EVIDENCE—CLOTHING WORN BY DECEASED.

On a trial for homicide, deceased's bloody clothing is admissible, where same tends to solve some controverted issue, but not otherwise.

7. CRIMINAL LAW ☞404(4)—DEMONSTRATIVE EVIDENCE—CLOTHING WORN BY DECEASED.

Where there was a controversy as to whether a homicide was committed on the gallery of a house, or in one of the rooms of the house, and there was evidence that there was little or no blood in the room in which the state claimed the stabbing took place, deceased's bloody clothing was admissible to meet the inference, favorable to defendant, to be drawn from this evidence, by showing that the clothes absorbed the blood.

8. CRIMINAL LAW ☞715 — ARGUMENT — EXHIBITING BLOODY CLOTHING.

Where deceased's bloody clothing is admitted in evidence on a trial for homicide, same should not be used in the argument to inflame the minds of the jury.

Appeal from District Court, Shelby County; Daniel Walker, Judge.

Tom Dugan was convicted of murder, and he appeals. Reversed and remanded.

Sanders & Sanders, of Center, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

MORROW, J. Appellant was convicted of murder, and his punishment fixed at 20 years' confinement in the state penitentiary. He stabbed deceased with a pocketknife, and the issues of self-defense and manslaughter, as well as murder, were raised by the evidence and submitted to the jury in the charge of the court.

[1] When the state rested, and before the appellant introduced any evidence, he filed a written motion or request as follows:

"Here and now, in open court, presents this written motion, and asks the court for the permission, the privilege, and the right of stating to the jury, through his counsel, the nature of the defenses relied upon by the defendant, and the facts which the defendant expects to be proved in their support."

This request was denied by the trial court. Exception was reserved, and in the bill there is embodied a recital of facts which the defendant says he would have stated to the jury through his counsel, had he been permitted. The court in his qualification certifies that the motion was presented in due time and overruled, and that attached to it was a written statement, which we infer is the same as that mentioned above as embodying the facts which appellant desired to present to the jury. The court says that, after reading the motion and the written statement attached thereto, he overruled the motion. His further qualification is that, except that the motion and statement were presented and overruled, and excepted to, he does not verify the statements in the bill, further than to say that the respective theories of the state and the appellant, as developed by the evidence, were conflicting.

The practice of allowing a defendant in a criminal case, preliminary to introducing his evidence, to make, through his counsel, an opening statement outlining his defenses and the evidence thereof, appears to have been followed from time immemorial. Thompson on Trials, vol. 1, § 270, and notes; Bishop's New Crim. Proc. vol. 2, § 968, p. 791. As said in 12 Cyc. 570:

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"The proper function of the opening for the defendant is to enable him to inform the court and jury what he expects to prove."

"The purpose of the opening," said Mr. Bishop, "is to put the jury in position to understand and apply the evidence as delivered." The adoption of this practice is in this state made statutory in article 717, C. C. P., subd. 5, from which we quote as follows:

"The nature of the defenses relied upon shall be stated by the counsel for the defendant, and what are the facts expected to be proved in their support."

Subdivision 3 of the same article says:

"The district attorney * * * shall state to the jury the nature of the accusation and the facts which are expected to be proved by the state in support thereof."

It has been held that this subdivision does not require the district attorney to make the statement. In that sense it is directory, rather than mandatory. Holsey v. State, 24 Tex. App. 35, 5 S. W. 523; Poole v. State, 45 Tex. Cr. R. 348, 76 S. W. 565; Bell v. State, 190 S. W. 732. The same is true of subdivision 5, supra. While it says that the statement "shall" be made, it is construed to mean that the accused has the privilege of doing so, but it is not required that it be done. White v. State, 181 S. W. 193. The procedure by which a defendant in a criminal case may avail himself of this privilege is discussed in Owen v. State, 52 Tex. Cr. R. 65, 105 S. W. 513; Meyer v. State, 41 S. W. 632; White v. State, 181 S. W. 193; House v. State, 171 S. W. 206. The right to make an opening statement is founded upon the practice at common law, and even in the absence of the statute is recognized by the English and American courts as a privilege, not to be arbitrarily denied. Wiley v. State, 52 Ind. 421; State v. Bateman, 52 Iowa, 603, 3 N. W. 622; Meyer v. State, 41 S. W. 632; People v. Wilson, 55 Mich. 506, 21 N. W. 905; Thompson on Trials, vol. 1, art. 933; Bishop's New Cr. P. vol. 2, § 968, and notes.

The correct view, we think, is that there rests in the court the judicial discretion to control the statement and limit it to its proper scope, and that when an accused in a timely manner seeks to avail himself of the privilege of making an opening statement, and does not seek to abuse the privilege by commenting upon improper or inadmissible facts, converting it into argument, or otherwise misusing it, it should be accorded, and when its denial, under these circumstances, is properly brought before this court for review, the denial will not be sanctioned. House v. State, 171 S. W. 206.

[2] In this case the appellant appears to have acted upon the suggestion contained in the opinion of this court in White's Case, 181 S. W. 193, and has brought before this court the fact that he sought to avail himself of the statute in a timely manner, that he was refused the privilege, that he advised the trial court of the scope of his proposed statement, calling attention to the fact that the issues in the case were such that it would aid the jury in understanding and applying the evidence, and this matter, including the substance of the proposed statement, is in the bill of exception. The fact that the motion made by appellant was accompanied by a written memorandum outlining his proposed statement did not militate against his right to make it, but, on the contrary, was appropriate in advising the trial court of its scope. We have found nothing in it which condemns it as improper. The court, as above stated, was vested with the judicial discretion to pass upon the proposed statement and the relevancy of the matters of evidence therein suggested, but not with the discretion to deny the privilege of making a proper statement. Thompson on Trials, vol. 1, § 933. We cannot say that the proposed statement would not have been beneficial to appellant in enabling the jury to comprehend his defenses, and apply the evidence thereto.

[3, 4] The homicide appears to have taken place in a sudden quarrel. Appellant's claim is that he was defending his life against three assailants. The deceased was stabbed in two places. One wound was not fatal; the other severed an artery. There is evidence that both were made from a position facing the deceased, whom appellant claims was attacking him with a chair. The pocketknife was not per se a deadly weapon. Its character as such and the intent of appellant were, under article 1147, P. C., questions of fact. The issues were such, we think, as did not justify the trial court in refusing appellant's request to instruct the jury on the law of aggravated assault. Bolden v. State, 73 Tex. Cr. R. 577, 166 S. W. 503, and cases there cited; Huddleston v. State, 70 Tex. Cr. R. 260, 156 S. W. 1168; Polk v. State, 60 Tex. Cr. R. 150, 131 S. W. 580; Hightower v. State, 56 Tex. Cr. R. 248, 119 S. W. 691, 133 Am. St. Rep. 966.

[5] A witness for the appellant gave important testimony in his behalf, and the state, on cross-examination, sought to show by him that he had manifested activity in trying to bring about a condition whereby two women, who were state witnesses, were to be gotten drunk, and thereby discredit them to the advantage of the appellant. It is insisted that the refusal of the court to exclude this evidence was error, invoking the rule that it is collateral, and not shown to have taken place with the knowledge of appellant, and therefore to be rejected—citing Michie's Ency. Digest of Texas Crim. Reports, vol. 2, p. 598; also Branch's Ann. Texas P. C. p. 92, and numerous cases there listed. The ruling of the court in permitting this cross-examination was, we think, not obnoxious to the rule laid down in the cases mentioned, but, on the contrary, was

consistent with the rule that permits the cross-examination of an adverse witness to show his bias and mental attitude and interest in the case to enable the jury to give to his testimony the proper weight. Mr. Branch, in section 163, p. 92, of his Annotated Penal Code, says:

"The motives which operate upon the mind of the witness when he testifies are never regarded as immaterial or collateral matters. The adverse party may prove declarations of a witness which tend to show bias, interest, prejudice, or any other mental state or status which, fairly construed, might tend to affect his credibility"—citing many cases, including Mason v. State, 7 Tex. App. 623; Latham v. State, 75 Tex. Cr. R. 575, 172 S. W. 808.

A late case on the subject is Burnaman v. State, 70 Tex. Cr. R. 361, 159 S. W. 244, which is also reported and elaborately annotated in 46 L. R. A. (N. S.) 1101, wherein it is stated that the rule is settled that in a criminal prosecution the state may show, for the purpose of impeaching a witness for defendant, that said witness has attempted to influence a witness for the state in favor of the defendant. Among the Texas Cases cited in the note are Webb v. State, 58 S. W. 82; Pace v. State, 79 S. W. 531; Lowry v. State, 53 Tex. Cr. R. 562, 110 S. W. 911; Owens v. State, 96 S. W. 31; Irvin v. State, 67 Tex. Cr. R. 108, 148 S. W. 589; Barry v. State, 37 Tex. Cr. R. 302, 39 S. W. 692; Pearson v. State, 56 Tex. Cr. R. 607, 120 S. W. 1004. Other cases in point are Brown v. State, 72 Tex. Cr. R. 33, 160 S. W. 375; Sorell v. State, 74 Tex. Cr. R. 100, 167 S. W. 359; Moore v. State, 65 Tex. Cr. R. 453, 144 S. W. 598.

[6-8] Complaint of the refusal of the court to exclude the clothes worn by the deceased at the time of the homicide is urged. The rules of evidence exclude the bloody clothing where they tend to solve no controverted issue, but do not reject them where the contrary is true. Hubby v. State, 8 Tex. App. 605; Milo v. State, 59 Tex. Cr. R. 196, 127 S. W. 1028. Other cases are cited in Branch's Crim. Law, § 436, subds. 1 and 2. The contention of appellant was that the homicide took place out on a gallery of the house of Mrs. Lock, where he claims he was attacked by deceased and others; that of the state was that it took place in one of the rooms of the house. Upon these conflicting theories there was evidence pro and con. The deceased bled profusely; his clothes were saturated with blood. There was evidence that there was very little or no blood in the room in which the state claims the stabbing took place. To meet the inference favorable to the appellant to be drawn from this evidence, the state used the clothes as tending to show that they absorbed the blood and prevented its escape, and to thus account for its absence in the room. We cannot say that they did not shed light upon this question, which was of importance in the case. We do not, therefore, think there was error in their introduction. They should not, on another trial, be used in argument to inflame the minds of the jury.

As presented in the record, and explained by the trial court, we do not find other bills showing error. Because of those pointed out, the judgment of the lower court is reversed, and the cause remanded.