COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-04-151-CR

 

 

IRA LEE WILSON                                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT
NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.
Introduction








Appellant
Ira Lee Wilson appeals from his conviction by a jury for the offense of
murder.  In six issues, appellant argues
that the trial court erred by (1) admitting a witness=s written statement under the rule
of optional completeness, (2) prohibiting appellant from discussing  the law of self-defense during his opening
statement, (3) prohibiting him from using exhibits on the law of self-defense
during his opening statement, (4) failing to find sudden passion under section
19.02(d) of the penal code, (5) allowing testimony that appellant had been
imprisoned for eight years, and (6) refusing appellant=s request that the jury be
instructed to disregard testimony that appellant had been imprisoned for eight
years.  We affirm.

II.
Background Facts

On
February 11, 2003, appellant shot and killed Robert Lewis after the two argued
over who was the better rapper, 50 Cent or Ja Rule.  Appellant pled not guilty to the charge of murdering Lewis.  A jury found appellant guilty of murder, and
the trial court assessed appellant=s punishment at forty years= confinement. 

III.
Written Statement








In
his first issue, appellant argues that the trial court erred by admitting
Teneshia Marable=s written statement under the rule
of optional completeness.  Marable
testified that she and her two-year-old son were at Clayton Mitchell=s apartment on the day of the
shooting.  Marable testified that
appellant was at the apartment when she arrived and that Lewis arrived
later.  She testified that shortly after
Lewis arrived at the apartment, he and appellant got into an argument.  Appellant, who was sitting down at the time,
stood up, holding a gun.  Lewis began
pushing appellant in the head.  Thinking
the two men were going to fight, Marable went to the couch to protect her
son.  Marable testified that as soon as
she sat down on the couch she heard several gunshots and saw Lewis lying on the
floor.  Marable picked up her son and
ran out of the apartment.  Toward the
end of the State=s direct examination of Marable,
the following exchange occurred:

[STATE:]
When you talked with the police, did you provide a written statement concerning
what happened that night and what you saw?

 

[MARABLE:] Yes.

[STATE:]
And did you give the police details of what you knew about this offense?

 

[MARABLE:] Yes. 

[STATE:] And is this what you are telling this jury today?

[MARABLE:] Yes.  








Appellant
then cross-examined Marable about inconsistencies between her written statement
and her trial testimony.  Appellant
asked Marable whether she had told the police that she had fallen asleep at
Mitchell=s apartment and had slept for
about an hour, which Marable denied. 
Appellant also asked Marable whether she had told police that she had
arrived at Mitchell=s apartment at around 5:00 p.m. on
the day Lewis was shot.  Again, Marable
said she had not.  Appellant then read
an excerpt from Marable=s written statement in which she
stated that she arrived at Mitchell=s apartment around 5:00 p.m. and that she fell asleep while
watching TV.  The following exchange
then occurred:

[DEFENSE
COUNSEL:]  Did you . . . tell them, AWhen I woke up Jimmy, and the boy
that shot [Lewis], my baby and Clifford was walking down the stairs@_

 

[MARABLE:] No.

[DEFENSE COUNSEL:] _@and [Lewis] was walking up the stairs@? 


[MARABLE:] No.

[DEFENSE
COUNSEL:] Did you tell them that the police_did you tell the police that they
were in there cutting cocaine and somebody ran in and shot_shot the place up?[2]

 

[MARABLE:] No.

[DEFENSE
COUNSEL:] And the police wrote all of these things down, and you just signed
the statement without reading it?

 

[MARABLE:]
He didn=t tell me_he just telling me to
sign right here, and I signed right there. 
And he let me go.  Well, he took
me back to the building. 

 








On
redirect, the State offered Marable=s written statement into evidence under the rule of
optional completeness.  See Tex. R. Evid. 107.  Appellant objected, arguing the statement
did not fall within the rule of optional completeness and thus was inadmissible
hearsay.  The trial court overruled
appellant=s objection and admitted Marable=s statement. 

We
review the trial court=s admission of evidence for an
abuse of discretion.  See Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); see also Wright
v. State, 28 S.W.3d 526, 535-36 (Tex. Crim. App. 2000) (applying abuse of
discretion standard to rule of optional completeness issue), cert. denied,
531 U.S. 1128 (2001); West v. State, 121 S.W.3d 95, 100 (Tex.
App._Fort Worth 2003, pet. ref=d) (same).  According to rule
107 of the rules of evidence,

When
part of an act, declaration, conversation, writing or recorded statement is
given in evidence by one party, the whole on the same subject may be inquired
into by the other, and any other act, declaration, writing or recorded
statement which is necessary to make it fully understood or to explain the same
may also be given in evidence, as when a letter is read, all letters on the
same subject between the same parties may be given.  

 








Tex. R. Evid.
107.  To be admitted under rule 107, Athe omitted portion of the
statement must be >on the same subject= and must be >necessary to make it fully
understood.=A 
Sauceda v. State, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004)
(citing Tex. R. Evid. 107).  @Rule 107 is one of admissibility and permits the
introduction of otherwise inadmissible evidence when that evidence is necessary
to fully and fairly explain a matter >opened up= by the adverse party.@  Credille v. State, 925
S.W.2d 112, 116 (Tex. App._Houston [14th Dist.] 1996, pet. ref=d).  AThe so-called rule of optional
completeness takes effect when other evidence has already been introduced but
is incomplete and misleading.@  Jones v. State, 963
S.W.2d 177, 182 (Tex. App._Fort Worth 1998, pet. ref=d).  Once a party opens an evidentiary door, the rule allows the
opposing party to complete the picture. 
West, 121 S.W.3d at 103. 
However, the party who opens an evidentiary door may not then invoke the
rule to further exploit an improper line of questioning.  Id.

A
party may not introduce an entire statement under the rule of optional
completeness by merely referring to the statement or a quotation from the
statement.  See Goldberg v. State,
95 S.W.3d 345, 387 (Tex. App._Houston [1st Dist.] 2002, pet. ref=d), cert. denied, 540 U.S.
1190 (2004).  But a party may invoke the
rule when an opposing party reads part, but not all, of the statement into
evidence.  See id. at 386.  When this happens, the remainder of the
statement on the same subject is admissible to reduce the possibility of the
fact finder receiving a false impression. 
Id.   








Appellant
argues that Marable=s entire written statement was not
Aon the same subject@ as the portion of the statement
admitted through his questioning and was not necessary to make the portion
fully understood.  He also argues that
the State was the party who Aopened the door@ by implying that Marable=s written statement was consistent
with her trial testimony and that therefore the State may not invoke the rule
of optional completeness.  We
disagree.  

Appellant
questioned Marable about certain inconsistencies between her written statement
and her trial testimony, such as the exact time Marable arrived at the
apartment and whether she fell asleep once she was there.  In addition, appellant read a portion of
Marable=s written statement, in which she
stated that she arrived at the apartment around 5:00 p.m. and fell asleep and
slept for an hour.  Appellant then asked
Marable whether she told the police that people in the apartment were cutting
cocaine when someone came in and shot the place up even though Marable did not
mention this in her written statement. 
By questioning Marable in this manner, appellant created the impression
that Marable=s statement contained more than it
actually did, namely, information regarding drug use in the apartment and
someone shooting the place up. 
Moreover, Marable=s written statement and the
portion introduced by appellant during his cross-examination of Marable were on
the Asame subject,@ that is, the subject of what
happened at Mitchell=s apartment on February 11,
2003.  Therefore, we hold that the trial
court did not abuse its discretion by admitting Marable=s written statement under the rule
of optional completeness.  The statement
was admissible under rule 107 even if it constituted otherwise inadmissible
hearsay.  We overrule appellant=s first issue. 








IV.
Opening Statement

In
his second issue, appellant argues that the trial court erred by prohibiting
him from discussing the law of self-defense during his opening statement.  In his third issue, appellant argues that
the trial court also erred by prohibiting him from using exhibits that explained
the law of self-defense during his opening statement.

During
his opening statement, appellant began to discuss the law of self-defense by
stating the following:

The
law of self-defense, I anticipate that the Judge will tell you this in his
charge to you, and we=ll introduce evidence of
self-defense, additional evidence of self-defense; but a person is justified in
using force, and the Judge is going to tell you about all of the law, including
the self-defense and the right to use deadly force, but a person is justified
in using force against another person when and to the degree he reasonably
believes that the force is immediately necessary to protect himself against
another=s use or attempted use of unlawful
force. 

 

The State
objected, contending that appellant=s opening statement was argument.  The trial court sustained the State=s objection.  Appellant then made an offer regarding his
planned opening statement, which included the use of several charts that
explained the law of self-defense and one chart that applied part of the law of
self-defense to the facts in the case. 
The trial court marked the charts as Court=s Exhibits 1 through 4 and ruled that they could
not be used during appellant=s opening statement. 








Generally,
trial courts have broad discretion in managing the course of a trial.  Dang v. State, 154 S.W.3d 616, 619
(Tex. Crim. App. 2005).  As a corollary,
trial courts have discretion to control opening statements and limit them to
their proper scope.  Dugan v. State,
82 Tex. Crim. 422, 199 S.W. 616, 617 (1917). 
Therefore, we will review the trial court=s decision to limit appellant=s opening statement for abuse of
discretion.   

Article
36.01 of the code of criminal procedure allows the defendant to state the Anature of the defenses relied upon
and the facts expected to be proved in their support.@ 
Tex. Code Crim. Proc. Ann.
art. 36.01(a)(5) (Vernon Supp. 2004-05). 
Through an opening statement, the defendant is able to communicate to
the jury his theory of the case in order to aid the jury in evaluating and
understanding the evidence as it is being presented.  See Twine v. State, 970 S.W.2d 18, 19 (Tex. Crim. App.
1998) (McCormick, J., concurring); Parra v. State, 935 S.W.2d 862, 871
(Tex. App._Texarkana 1996, pet. ref=d).  However, the
trial court has the duty to instruct the jury on the applicable law.  Holladay v. State, 709 S.W.2d 194,
199 (Tex. Crim. App. 1986).  According
to article 36.14 of the code of criminal procedure, the trial court, not the
parties, shall Adeliver to the jury . . . a
written charge distinctly setting forth the law applicable to the case.@ 
Tex. Code Crim. Proc. Ann.
art. 36.14.  








In
the present case, the trial court prohibited appellant from discussing, along
with the use of charts, the law of self-defense in the abstract.  However, the trial court did not prohibit
appellant from stating the nature of the defenses relied on and the facts that
he expected to prove.  In fact,
appellant mentioned several times during his opening statement that he acted in
self-defense.  Moreover, appellant
discussed facts that he intended to prove to support his claim of self-defense,
such as the fact that Lewis carried a gun and had once threatened to shoot
Lewis=s aunt and uncle. 

Appellant
cites no authority for the proposition that a trial court abuses its discretion
by not allowing a defendant to discuss the law of a particular defense in the
abstract during the defendant=s opening statement. 
Therefore, we hold that the trial court did not abuse its discretion by
prohibiting appellant from discussing the law of self-defense and from using
charts that explained the law of self-defense during his opening
statement.   We overrule appellant=s second and third issues.  

V.
Imprisonment 








We
will address appellant=s fifth and sixth issues next
because, unlike appellant=s fourth issue, they pertain to
the guilt-innocence phase of the trial. 
In his fifth issue appellant argues that the trial court erred by
allowing testimony that appellant had been imprisoned for eight years.  In his sixth issue, appellant argues that
the trial court erred by refusing to instruct the jury to disregard testimony
that appellant had been imprisoned for eight years.  Because appellant=s fifth and sixth issues are related, we will address them
together.  

During
appellant=s case-in-chief, he asked defense
witness Clifford Burton how long he had known appellant.  Burton respond, AIra, when he got locked up back in
time, I was small.  Then I remember his
face, and then I refresh his memory, I been knowing Ira for like three years.@ 
Appellant did not object to Burton=s testimony. 
During the State=s cross-examination of Burton, the
following exchange occurred:

[STATE:]  Okay. 
You said that you have been knowing [appellant] since he got out after
being locked up, right?  That was after
the Defense lawyer asked you a question, right?

 

[BURTON:]  Yeah.

[STATE:]  How long had he been locked up as far as you
know?

 

[DEFENSE COUNSEL:] 
Object to relevancy.

THE COURT: 
Overruled.

[STATE:]  Do you
know how long he had been locked up?

[BURTON:]  Eight
years, as far as I know.

[STATE:]  He did
eight years in the penitentiary.  

[BURTON:]  Uh-huh. 








[STATE:]
 And he came back out of the
penitentiary November before this happened, before this killing happened?

 

[BURTON:]  Yeah.

Shortly
thereafter, the following occurred:

[STATE:]  So he comes back to the neighborhood after
doing eight years in the penitentiary?

 

[DEFENSE
COUNSEL:]  Judge, I object.  I think it is a violation of the Motion in
Limine, if it please the Court. 

 

The trial
court then called the attorneys to the bench and asked the State where it was
going.  The State ultimately agreed to
move on from its line of questioning. 
Appellant requested the trial court to instruct the jury to disregard
the fact that appellant had been locked up for eight years, but the trial court
refused. 








To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Mosley
v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S.
1070 (1999).  Further, the trial court
must have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s refusal to rule.  Tex.
R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004).  A party must continue to object
each time inadmissible evidence is offered unless the party (1) asks for and
receives a running objection, or (2) objects and receives a ruling outside the
presence of the jury.  Tex. R. Evid. 103(a)(1); Ethington
v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); Beheler v. State,
3 S.W.3d 182, 187 (Tex. App._Fort Worth 1999, pet. ref=d).

In
the present case, appellant objected after the State=s initial question to Burton
regarding the length of appellant=s incarceration. 
But appellant did not object afterwards when the State asked Burton
whether appellant had done eight years in the penitentiary and whether
appellant had gotten out of the penitentiary in November before the
shooting.  Appellant never asked for a
running objection or a hearing outside of the jury=s presence so that he would not
have to constantly object.  See Ethington,
819 S.W.2d at 859.  Although appellant
did receive a ruling outside the jury=s presence, the ruling did not come until after the State
had asked several questions and received several answers regarding appellant=s incarceration.  Thus, appellant failed to preserve
error.  We overrule appellant=s fifth and sixth issues.

VI.
Sudden Passion








In
his fourth issue, appellant argues that the trial court=s failure to find Asudden passion@ under section 19.02 of the penal
code was so against the great weight and preponderance of the evidence as to be
manifestly unjust.  Before voir dire,
appellant elected to have the trial court assess punishment if the jury found
him guilty.  See Tex. Code Crim. Proc. Ann. art. 37.07,
_ 2(b) (Vernon Supp. 2004-05).  The jury
found appellant guilty of murder, and after a punishment hearing, the trial court
assessed appellant=s punishment at forty years= confinement.  Further, the trial court declined to find
that appellant acted under the influence of sudden passion, stating, AThe sudden passion, I do not make
a finding on sudden passion.  That
sudden passion should arise from an adequate cause.  He wanted to fight you and you don=t get to shoot somebody if they want to fight.@ 

Normally,
the offense of murder is a first-degree felony.  Tex. Penal Code Ann.
' 19.02(c) (Vernon 2003).  But according to section 19.02(d) of the
penal code,

At
the punishment stage of trial, the defendant may raise the issue as to whether
he caused the death under the immediate influence of sudden passion arising
from an adequate cause.  If the
defendant proves the issue in the affirmative by a preponderance of the
evidence, the offense is a felony of the second degree.  

 

Id. ' 19.02(d).








ASudden  passion@ is defined as Apassion directly caused by and
arising out of provocation by the individual killed or another acting with the
person killed which passion arises at the time of the offense and is not solely
the result of former provocation.@  Id. ' 19.02(a)(2).  The penal code defines Aadequate cause@ as Acause that would commonly produce a degree of
anger, rage, resentment, or terror in a person of ordinary temper, sufficient
to render the mind incapable of cool reflection.@  Id. ' 19.02(a)(1).  However, a defendant may not rely on a
cause of his own making, such as when he precipitates a confrontation.  Naasz v. State, 974 S.W.2d 418, 423
(Tex. App._Dallas 1998, pet. ref=d); Nance v. State, 807 S.W.2d 855, 861 (Tex.
App._Corpus Christi 1991, pet. ref=d).

In
reviewing appellant=s issue, we must consider all the
evidence relevant to the issue of sudden passion to determine whether the trial
court=s finding is so against the great
weight and preponderance of the evidence so as to be manifestly unjust.  Hernandez v. State, 127 S.W.3d 206,
212 (Tex. App._Houston [1st Dist.] 2003, pet. ref=d); Vasquez v. State, 84 S.W.3d 269, 271
(Tex. App._Corpus Christi 2002, no pet.). 
We are to view all the evidence in a neutral light, favoring neither
party.  See Zuniga v. State, 144
S.W.3d 477, 481 (Tex. Crim. App. 2004); Hernandez 127 S.W.3d at
212.  Furthermore, we are to give
deference to the trial court=s determinations, including determinations involving the credibility
and demeanor of witnesses.  See
Zuniga at 481.  We may not
substitute our judgment for that of the trial court=s.  See id. at 482.








In
the present case, both eye witnesses to the shooting, Jimmy Lenard and Teneshia
Marable, testified that appellant and Lewis began to argue shortly after Lewis
arrived at Mitchell=s apartment.  Marable testified that appellant stood up
from the couch he was sitting on holding a gun.  Lenard testified that appellant stood up from the couch and
walked toward Lewis holding the gun. 
From this evidence, the trial court could have found that appellant
provoked the incident and therefore did not act under the immediate influence
of sudden passion arising from an adequate cause.  See Naasz, 974 S.W.2d at 423; Nance, 807
S.W.2d at 861.

Accordingly,
the trial court=s negative finding on the issue of
sudden passion was not so against the great weight and preponderance of the
evidence as to be unjust.  We overrule
appellant=s fourth issue.        

VII.
Conclusion

Having
overruled all of appellant=s issues, we affirm the trial court=s judgment.      

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON,
GARDNER, and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R.
App. P. 47.2(b)

 

DELIVERED:  September 15, 2005











[1]See Tex.
R. App. P. 47.4.





[2]Marable did not say anything in
her written statement about people cutting cocaine in the apartment or someone
shooting the place up.