Joseph Kenton McGOWEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–00246–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 10, 1997.

**482**

Clinton F. Greenwood, George McCall Secrest, Jr., Houston, for appellant.

William J. Delmore, III, Houston, for appellee.

Before YATES, O'NEILL and DRAUGHN,* JJ.

## OPINION

DRAUGHN, Justice (Assigned).

Appellant entered a plea of not guilty to the offense of murder. TEX.PENAL CODE ANN. § 19.02 (Vernon 1992).[1] A jury found him guilty and assessed his punishment at fifteen years confinement in the Institutional Division of the Texas Department of Criminal Justice. In four points of error, appellant asserts the trial court erred by (1) denying appellant the right to make an opening statement, (2) admitting inadmissible hearsay evidence, and (3) refusing to instruct the jury that appellant had a right to arm himself. Appellant also challenges the sufficiency of the evidence. We reverse and remand.

## FACTS AND PRIOR POSTURE

On August 25, 1992, appellant, a Harris County Deputy Sheriff, shot and killed Susan White while executing a warrant for her arrest on a felony charge of retaliation. The retaliation charge was based on a telephone call made by White in which she allegedly threatened a confidential informant, Michael Schaeffer. Schaeffer, a confidential informant for appellant, had assisted him in an investigation which resulted in the arrest of White's son, Jason Aguilar (Aguilar) for possessing a stolen credit card and selling a stolen pistol. Aguilar testified that when he was arrested on August 22, 1992, his mother came to the scene. She was extremely angry about his arrest and told appellant, "I'm going to get you, you son of a bitch." The record reveals that White and appellant had encounters on several previous occasions. White had made several complaints about appellant. She believed appellant was intentionally harassing her and her son.

White attempted to call the mother of the informant Schaeffer and left a message on her sister's answering machine that "informants in Houston don't live long." White had called Schaeffer's mother because she was trying to get information that could help get her son out of jail. Schaeffer, a "friend" of Aguilar's, agreed to help appellant obtain confidential information on Aguilar in an effort to help appellant get some illegal guns off the street. Appellant had stopped Schaeffer several times for traffic violations, and during one stop, Schaeffer agreed to help appellant as a confidential informant. Aguilar testified that appellant had offered him money for his information. Appellant, however, denied this when he testified.

Schaeffer told appellant about one particular phone conversation between his mother and White. Schaeffer told appellant that neither he nor his mother felt the call was a threat. Nevertheless, appellant told Schaeffer that White was threatening him and she needed to go to jail. Appellant then contacted the District Attorney's Intake Division and gave false information about White in order to obtain an arrest warrant. Appellant told the prosecutor at the Intake Division that White had said, "I'm going to kill the CI (confidential informant), for having my son arrested and he'll be dead before the day is

---

* Former Justice Joe L. Draughn sitting by assignment.

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

rightthe

over or the night is over." The prosecutor asked appellant if the complainant could be taken seriously. He responded that she had been violent, and had been known to carry a gun. The prosecutor told appellant she would not file charges against White until he spoke to Schaeffer's mother. Appellant then had an Austin police officer drive to the home of Schaeffer's mother in the middle of the night to notify her to call him. When Schaeffer's mother called appellant, he gave her false information about White and Aguilar so he could get the warrant executed. For instance, appellant told Schaeffer's mother that they, the police, had watched Aguilar break into a house and that White was a "crazy woman" and had almost gotten arrested at the police station for creating a scene.

The appellant testified that he attempted to call White before driving to her residence to execute the warrant, but she did not answer the phone. Appellant and two deputies arrived at White's residence sometime after midnight to execute the warrant. The officers banged on White's door, and when she responded, she asked for some identification. White told appellant to go away and she would open the door. White then made two 9–1–1 calls complaining of appellant being at her house.

In the meantime, appellant called the police station and obtained permission to force entry into White's house. The officers kicked open the back door. One officer testified that he lost his balance when entering the residence so appellant went ahead. Appellant testified that he saw White crossing the bedroom doorway with an unknown object in her hand. He claims to have yelled, "Sheriff's Office felony warrant" twice, and "come out where we can see your hands." He testified that he then leaned into the bedroom, saw White facing him with a gun pointed at him, and he ordered her to put the gun down three times. He stated she leaned near the headboard of the bed pointing the pistol in his direction so he fired his gun three times, killing her.

### POINTS OF ERROR

In appellant's first point of error, he alleges the trial court erred in denying his request to make an opening statement after the State rested its case. The record reflects that the State did not make an opening statement before it presented its evidence. After the State rested, defense counsel requested permission to make an opening statement. The trial judge responded, "Please go ahead," and the prosecutor objected. The prosecutor told the trial judge that the State had waived opening argument, therefore the defense was not entitled to make an opening statement. The trial judge sustained the objection. Defense counsel objected to being denied the opportunity to make an opening statement.

The right to make an opening statement is a statutory right and not a constitutional imperative or mandate. *Dunn v. State,* 819 S.W.2d 510, 524 (Tex.Crim.App. 1991); *accord United States v. Salovitz,* 701 F.2d 17, 20 (2nd Cir.1983); *cf. Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (holding right to make closing argument is constitutional with right to assistance of counsel). In Texas, the right to make an opening statement is a valuable right derived from the Code of Criminal Procedure, specifically art. 36.01. *Moore v. State,* 868 S.W.2d 787, 789 (Tex.Crim.App. 1993). Article 36.01 sets out the order of proceeding in any criminal action involving a jury and provides that a defendant's opening statement shall be made after the presentation of the State's evidence. *Id.; Atkinson v. State,* 523 S.W.2d 708, 710–11 (Tex.Crim. App.1975). Denial of a timely request to present an opening statement is a denial of a valuable right, and constitutes reversible error. *See Penry v. State,* 903 S.W.2d 715, 760 (Tex.Crim.App.1995); *Crew v. State,* 387 S.W.2d 898, 899 (Tex.Crim.App.1965); *see also Farrar v. State,* 784 S.W.2d 54, 56 (Tex.App.—Dallas 1989, no pet.).

In 1987 the legislature amended article 36.01 to allow a defendant the option to determine when to make an opening statement. *Id.* Amendment (b) to article 36.01 entitles the defendant to make an opening statement "immediately after the attorney representing the State makes an opening statement for the State." TEX.CODE CRIM.

PROC.ANN. art. 36.01(b); *Dunn,* 819 S.W.2d at 524; *Farrar,* 784 S.W.2d at 56. Thus under article 36.01(b), the defendant's right to make an opening statement before the State presents its evidence is contingent on the State's making an opening statement. If the State makes no opening statement, the defendant may not make an opening statement until prior to presenting his own case in chief. *See Boston v. State,* 871 S.W.2d 752, 752 (Tex.Crim.App.1994); *Winters v. State,* 870 S.W.2d 632, 635 (Tex.App.—Houston [1st Dist.] 1994, no pet.).

However, it has never been disputed that a defendant may present an opening statement after the close of the State's evidence pursuant to art. 36.01(a)(5). *Moore,* 868 S.W.2d at 789. The failure to allow a defendant to make an opening statement under the provisions of art. 36.01 constitutes reversible error. *Penry,* 903 S.W.2d at 760; *Farrar,* 784 S.W.2d at 56. In *Farrar,* the defense counsel requested the opportunity to make an opening statement after the close of the State's evidence. The trial court, quoting the provisions of 36.01(b), mistakenly concluded that this amendment to 36.01 precluded the defendant from presenting an opening statement under 36.01(a) because the State had not made an opening statement. *Farrar,* 784 S.W.2d at 56. The Dallas Court of Appeals held article 36.01(b) does not eliminate the defense attorney's right to make an opening statement after the State rested, but when read in conjunction with subsection (a) of article 36.01, gives the defense counsel a choice of when to make his opening statement. *Id.* The court also held the denial of that valuable statutory right constitutes reversible error. *Id.* The issue before us is the same as that in *Farrar.* In our case, the trial judge also misconstrued article 36.01(b) and denied the defense request to present an opening statement after the State rested its case. The Court of Criminal Appeals in *Moore* made it clear that a defendant's right to choose *when* to make its opening *statement* was viable only if the State made an opening statement; otherwise that right could only be exercised after the State presented its evidence. *Moore,* 868 S.W.2d at 790–91.

The State argues that appellant waived any such error by failing to properly preserve it. Specifically, the State argues the defense counsel's objection was not specific enough and failed to preserve for review the content of the statement he desired to make. In order to preserve error, an adverse ruling on an objection must be obtained in the trial court. TEX.R.APP.P. 52(a); *Chappell v. State,* 850 S.W.2d 508, 510 (Tex. Crim.App.1993); *Lewis v. State,* 664 S.W.2d 345, 349 (Tex.Crim.App.1984). A formal bill of exception is not required to preserve error when the defense is denied the right to make an opening statement. *Crew,* 387 S.W.2d at 899. Contrary to the State's assertion, the appellant here obtained an adverse ruling from the trial court and specifically stated his objection, therefore, he preserved error. This conclusion is supported by the record, which shows that the State objected to defense counsel making an opening statement and told the judge, "Judge I have to object. The State made no opening statement and I don't believe the Defense is entitled to make an opening statement unless the State has made a[sic] opening statement." The trial court sustained the State's objection and appellant's trial counsel told the judge, "Your Honor, for the record I would object to the denial of me being able to make an opening statement to the jury." The judge responded, "all right." Thus the nature of the error was made clear to the judge who could have timely corrected the error. Nothing more was required of the defense attorney to preserve error.

The State next maintains that even if the defendant properly preserved error, the denial of the defense counsel's opportunity to make an opening statement should be found harmless under the Texas Rules of Appellate Procedure 81(b)(2). In *Sodipo v. State,* 815 S.W.2d 551 (Tex.Crim.App.1990), the Texas Court of Criminal Appeals held that some cases involving breach of procedural statutes contain no concrete data from which an appellate court can meaningfully gauge the likelihood that the error did or did not contribute to the conviction or punishment of the accused. *Id.* at 554. The Court of Criminal Appeals has not decided whether all manda-

tory statute violations are immune to harmless error analysis. *Id.* Based on this rationale of the Court of Criminal Appeals, we cannot engage in a harm analysis here because the record contains no concrete data or basis which would enable us to ascertain to what extent the denial of such a "valuable right" impacts the jury, and its probable collateral consequences. *See Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989); *Farrar,* 784 S.W.2d at 56. Moreover, in *Farrar,* the case we find indistinguishable from the instant case, the Dallas Court of Appeals held that the trial court's denial of the right to an opening statement is reversible error without a harm analysis. *See Farrar,* 784 S.W.2d at 56. In fact, the Court of Criminal Appeals has stated that the denial of a proper request by the defendant to make an opening statement creates a presumption of injury. *McBride v. State,* 110 Tex.Crim. 308, 7 S.W.2d 1091 (1928). From that early analysis to the interpretation of art. 36.01 found in *Moore* and *Farrar,* it is clear that the denial of this right constitutes reversible error, and such denial is not realistically subject to a harm analysis. This issue does not reach us in a legal vacuum without precedent to direct us. We cannot therefore, as the State suggests, simply subject the denial of the opening statement to a harm analysis in the face of clear, contrary precedent. We sustain appellant's first point of error.

Because we reverse the conviction based on point of error number one, we need not address the merits of appellant's points of error number two and four. We must, however, consider appellant's third point of error, because he contends the evidence was legally insufficient to support the jury's verdict. Specifically, appellant asserts that as a matter of law the State did not present sufficient evidence to prove that he did not act in self-defense when he shot the decedent.

In reviewing the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Patrick v. State,* 906 S.W.2d 481, 486 (Tex.Crim.App. 1995). We look at all the evidence, whether properly or improperly admitted. *Bobo v. State,* 843 S.W.2d 572, 575–76 (Tex.Crim. App.1992); *Beltran v. State,* 728 S.W.2d 382, 389 (Tex.Crim.App.1987). However, we do not sit as a thirteenth juror and disregard or reweigh the evidence. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). If there is evidence that establishes guilt beyond a reasonable doubt, and if the trier of fact rationally believes that evidence, we are not in a position to reverse the judgment on sufficiency of evidence grounds. *Id.*

The issue of self-defense is an issue of fact to be determined by the factfinder. *Saxton v. State,* 804 S.W.2d 910, 913 (Tex. Crim.App.1991). A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Id.* at 914. A person is justified in using force against another when, and to the degree, he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. TEX.PENAL CODE ANN. § 9.31(a) (Vernon 1994). Use of deadly force in self-defense, however, is only justified if a reasonable person in the situation would not have retreated, and deadly force was immediately necessary to protect against another person's use or attempted use of unlawful deadly force. TEX.PENAL CODE ANN. § 9.32 (Vernon 1994).

We have examined the evidence and, viewing it in the light most favorable to the verdict, find it sufficient to support the jury's verdict. The jury could have rationally found that appellant's use of deadly force was not immediately necessary to protect against White's alleged use or attempted use of deadly force. The jury could have found the felony warrant was based on false information deliberately supplied by appellant to obtain a warrant for her arrest. The jury could have also determined that because of the prior encounters between appellant and White, a hostile relationship existed: that appellant was not acting in self-defense when he requested permission to force entry into White's house and then shot her three times. In short, the jury had ample evidence to cast doubt on appellant's credibility, and they

simply did not believe his testimony. We find that a rational trier of fact could have determined that appellant did not act in self-defense, and that he was guilty of murder as found. Appellant's third point of error is overruled.

The judgment is reversed and the cause remanded to the trial court.

YATES, Justice, concurring.

I agree with the majority that the right to make an opening statement is a valuable right, the denial of which constitutes reversible error. I write separately merely to elaborate on the importance of the right to offer an opening statement.

Although not a constitutional imperative or mandate, the right to make an opening statement is an important part of an accused's right to a trial by jury. If trial courts were allowed to deny an accused this valuable right it would chip away at the fundamental right of trial by jury that Americans and Texans hold so dear. As Judge Clinton eloquently pointed out in his dissent in *Moore v. State*, 868 S.W.2d 787 (Tex.Crim.App.1993);

> Having declared independence from the ruling government in part because it denied, and having fought the ensuing revolution in part to obtain, the right to trial by jury, our forbearers enshrined that right in the Sixth and Ninth Declaration of Rights of the Constitution of the Republic of Texas. [T]hey maintained it in the Bill of Rights in all successive constitutions: *"the accused shall have* a speedy public *trial by* an impartial jury."
>
> . . . .
>
> [T]he practice of making "opening statements" is a feature of the common law, "followed from time immemorial." The manifest function is to inform jurors of the nature of the accusation and the facts the State expects to prove in support thereof, and the nature of the defenses and facts the accused expects to support them. Thus the jury is "put in a position to understand and apply the evidence as delivered." Also and not so incidentally, obviously each side gains more insight into the opposing theory of the case.

*Id.* at 791 (Clinton, J. dissenting) (citations omitted).

Thus, it has been the law in this State since the early 1900's that although a trial judge has the discretion to control the opening statement and limit it to its proper scope, "when an accused in a timely manner seeks to avail himself of the privilege of making an opening statement, and does not seek to abuse the privilege by commenting upon improper or inadmissable facts, converting it into argument, or otherwise misusing it, it should be accorded, and when its denial . . . is brought before this court for review, the denial will not be sanctioned." *Dugan v. State,* 199 S.W. 616, 617 (Tex.Crim.App.1917) (citing *House v. State,* 75 Tex.Crim. 338, 171 S.W. 206 (1914)).

It is unfortunate that we are compelled to order a new trial for appellant on what may be perceived by some as a "technicality." It is more unfortunate, however, that the trial court hastily dismissed a critical component of the right to trial guaranteed to every citizen. With these brief additional remarks, I concur with the majority.

O'NEILL, J., joins in this concurrence.