Ernest DAVIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–98–00576–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 10, 2000.

Rehearing Overruled July 20, 2000.

Thomas R. Greene, Houston, for appellants.

Dan McCrory, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

## MAJORITY OPINION

MAURICE E. AMIDEI, Justice.

Ernest Davis appeals his conviction by a jury for the offense of possession of cocaine. The trial court sentenced appellant to ten years imprisonment. In three points of error, appellant contends (1) the trial court erred in denying his motion to suppress all evidence seized as a result of a warrantless arrest, (2) the trial court erred in denying defense counsel the right to make an opening statement, and (3) appellant was denied effective assistance of counsel. We affirm the judgment of the trial court.

### I. BACKGROUND

On the evening of March 6, 1998, Officer Myron Dillingham was on routine patrol in a marked police car when he saw appellant, Ernest Davis, walking down the street. Officer Dillingham recognized appellant as someone he had dealt with in the past. When he was about ten feet away from appellant, Dillingham shined his spotlight on appellant. Dillingham then observed the appellant throw down a clear container. Upon seeing the appellant throw down the object, the officer turned on his emergency lights and exited his vehicle. The officer arrested appellant for littering. Officer Dillingham then recovered the discarded container and determined that the contents were cocaine. The container contained 635 milligrams of crack cocaine. Dillingham placed appellant under arrest for possession of a controlled substance.

### II. MOTION TO SUPPRESS

In his first point of error, appellant contends that he was unlawfully detained when Officer Dillingham shined the spotlight on him, and therefore, his abandonment of the cocaine was an involuntary result of an illegal detention. Appellant

argues that Dillingham used a show of authority (the spotlight) to detain appellant without any reasonable suspicion. It is claimed that the use of the spotlight amounted to a seizure of appellant. Because the abandonment of the cocaine was a product of police misconduct, appellant argues it was not admissible into evidence, and the trial court erred in overruling appellant's motion to suppress. We disagree.

### A. Standard of Review

A ruling on a motion to suppress lies within the sound discretion of the trial court. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). At the hearing on the motion, the trial court serves as the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.; Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

Appellate courts should afford almost total deference to a trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category. *Id.* The trial court's decision to grant or deny the motion to suppress turned on the court's assessment of whether shining the spotlight on appellant constituted a seizure, which is a question of law. Therefore, we will review the record *de novo*. *See Hunter v. State*, 955 S.W.2d 102 (Tex. Crim.App.1997); *see also Loserth v. State*, 963 S.W.2d 770 (Tex.Crim.App.1998).

### B. Legality of the Seizure of the Cocaine

We first need to address whether appellant's point of error was properly preserved for our review. To preserve error for appellate review, the complaining party must have raised his complaint in the form of an objection, request or motion in the trial court and obtained a ruling. Tex.R.App. P. 33.1(a)(1); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App.1995). Additionally, the point of error must correspond to the motion made at trial. *Turner v. State*, 805 S.W.2d 423, 431 (Tex.Crim. App.1991). A motion which states one legal theory cannot be used to support a different legal theory on appeal. *Broxton*, 909 S.W.2d at 918. Appellant's trial counsel claimed that the evidence should be suppressed based on the theory that littering is not an offense that gives rise to probable cause. Appellant failed to complain during the motion to suppress hearing that Dillingham's shining of the spotlight amounted to a show of force. This argument was raised for the first time on appeal. Because appellant's complaint on appeal does not comport with the motion he made at trial, he has failed to properly preserve error for our review. We overrule appellant's point of error one.

## III. DENIAL OF RIGHT TO MAKE AN OPENING STATEMENT

In his second point of error, appellant contends the trial court erred in refusing his request to make an opening statement before his case-in-chief. During the State's case-in-chief, the State waived its right to make an opening statement. At the conclusion of the State's case appellant's attorney requested that he be allowed to make a short opening statement prior to putting on evidence in appellant's case-in-chief. The trial judge denied appellant's attorney the right to make an opening statement stating that, "[s]ince it wasn't made by the state, you can't make one, I think one follows the other, as I understand the law." Appellant's attorney stated that he was entitled to an opening statement. The trial judge responded that the defense is only entitled to an opening statement if the State makes an opening statement. Appellant's attorney then objected on the record to not being allowed an opening statement in appellant's case-

in-chief. The trial court overruled the objection.

## A. Standard of Review

■ A defendant may present an opening statement after the close of the State's case-in-chief. *See* Tex.Code Crim. Proc. Ann. Art. 36.01(a)(5) (Vernon Supp.1999); *Moore v. State*, 868 S.W.2d 787, 789 (Tex. Crim.App.1993). The failure of a trial court to allow such a statement constitutes error. *Farrar v. State*, 784 S.W.2d 54, 56 (Tex.App.-Dallas 1989, no pet.). We therefore find the trial court erred in not allowing appellant's trial counsel to make an opening statement.

Our analysis does not end there, however. In *McGowen v. State*, 944 S.W.2d 481 (Tex.App.-Houston [14th Dist.] 1997), *vacated and remanded*, 991 S.W.2d 803 (Tex. Crim.App.1998) (en banc), this Court held that an error in denying a defendant the right to present an opening statement constitutes reversible error without a harm analysis. At the time this Court handed down its opinion, it did not have the benefit of the Court of Criminal Appeal's decision in *Cain v. State*, 947 S.W.2d 262 (Tex. Crim.App.1997). *See McGowen v. State*, *vacated* 991 S.W.2d 803 (Tex.Crim.App. 1998) (en banc). In *Cain*, the court held that "except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of plea, or any other mandatory requirement, is categorically immune to a harmless error analysis." *Cain*, 947 S.W.2d at 264. We therefore must conduct a harm analysis.

## B. Harm Analysis

■ Our harm analysis must begin with a determination of whether the denial

of the right to make an opening statement is constitutional error. Tex.R.App. P. 44.2.[1] In *Moore* the Court held the right to make an opening statement is a statutory right, not a constitutional right. *Moore*, 868 S.W.2d at 789. Therefore, the error in this case involves Tex.R.App. P. 44.2(b). Under rule 44.2(b) we are to disregard the error unless a substantial right is affected. Tex.R.App. P. 44.2(b). Since rule 44.2(b) is virtually identical to rule 52(a) of the Federal Rules of Criminal Procedure, we may look to federal case law for guidance on the meaning of this rule. *Umoja v. State*, 965 S.W.2d 3, 11 (Tex.App.-Fort Worth 1997, no pet.) (opinion on reh'g). A substantial right is affected when (1) the error had a "substantial and injurious" effect or influence in determining the jury's verdict or (2) leaves one in grave doubt whether it had such an effect. *See O'Neal v. McAninch*, 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); *United States v. Arutunoff*, 1 F.3d 1112, 1118 (10th Cir.), cert. denied, 510 U.S. 1017, 114 S.Ct. 616, 126 L.Ed.2d 580 (1993); *see also King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Coggeshall v. State*, 961 S.W.2d 639, 642–44 (Tex.App.-Fort Worth 1998, pet. ref'd). To make the determination of "substantial influence," appellate courts must review the entire record to discern whether the error "substantially swayed" the jury, or had a "substantial influence" on the jury's verdict in the context of the entire case against the defendant. *Umoja*, 965 S.W.2d at 11, *United States v. Blake*, 107 F.3d 651, 653 (8th Cir.1997); *United States v. Wilson*, 107 F.3d 774, 785–86 (10th Cir. 1997). Our task, therefore, is not simply to identify what particular substantial right may have been affected; rather, it is to determine whether the error influenced the trial's outcome.

---

1. Rule 44.2 provides:

 (a) Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt the error did not contribute to the conviction or punishment.

 (b) Other Errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

■ In summary, when we assess harm under Rule 44.2(b), we review the entire record to determine whether the error did not influence or had only a slight influence on the verdict. If we have grave doubts about its effect on the outcome, or if we find that it had more than a slight influence, we must conclude that the error was such as to require a new trial. *See Fowler v. State*, 958 S.W.2d 853 (Tex.App.-Waco 1997, no pet.).

■ To perform a meaningful harm analysis under any standard, the record must provide enough information for the reviewing court to estimate the effect of the error. An opening statement that is not made is, of course, not in the record. However, we cannot say that the outcome would have been different had appellant's attorney made an opening statement. Defense counsel quite often waive openings as a simple matter of trial strategy. The function of an opening statement is merely to "state what evidence will be presented." *United States v. Dinitz*, 424 U.S. 600, 612, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (Burger, C.J., concurring). Moreover, the transcript shows that appellant's trial counsel was only going to make a "brief"opening statement. The trial was not complicated, with the State calling only four witnesses and appellant calling three. The transcript bears proof that the testimony was straightforward. In fact, the whole trial lasted but one day, and the jury deliberated for only one hour and fourteen minutes before finding appellant guilty.

We do not view appellant's defense as a new or complicated theory that the jury might find difficult to understand without clarification. Both the State's and appellant's cases-in-chief were simple and short. Although we disapprove of the trial court's refusal to permit the appellant to make an opening statement, we are satisfied that the jury did not have any difficulty in following appellant's presentation of his case, even without an opening statement.

Similarly, we conclude in this case that overwhelming evidence of appellant's guilt supports the conclusion that the trial's outcome was not influenced and appellant's substantial rights were not affected by the trial court's error. Given the overwhelming evidence of guilt, we also conclude that any rational jury, including one that had heard an opening statement, would have found appellant guilty.

We do not suggest, however, that the erroneous denial of the right to make an opening statement can never be reversible error. A particular record may present facts showing that the erroneous denial of an opening statement had a substantial and injurious effect on the verdict, or a record may leave this Court with grave doubts about the error's effect on the trial's outcome. The record in this case does not. The record before us supports the conclusion that the trial court's error did not affect the outcome of the trial. In the absence of prejudice, we do not find reversible error. We overrule appellant's point of error two.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his third point of error, appellant contends that he received ineffective assistance of trial counsel at the hearing of appellant's motion to suppress, and during the guilt/innocence phase of the trial. Specifically, appellant contends the following acts of ineffectiveness by his trial counsel:

1. During the hearing of appellant's motion to suppress, trial counsel failed to argue that Officer Dillingham's shining the spotlight on appellant was a detention of the appellant by a show of force. Trial counsel further failed to argue that appellant abandoned the contraband as a direct result of Dillingham's unlawful detention of appellant. Appellant's trial counsel instead raised the issue that littering is not an offense that gives rise to probable cause to detain appellant.

2. Trial counsel repeatedly tried to prove that more than one officer was pres-

ent at appellant's arrest without showing how this matter would affect the outcome of the case.

3. In the guilt/innocence phase, appellant's counsel made several meaningless objections. Trial counsel objected to the armed witness (Officer Dillingham) in the court room.

4. Trial counsel failed to object when the State mentioned the large sum of money that appellant had on his person when arrested.

5. Trial counsel put appellant on the stand in its case-in-chief. Counsel then inquired into appellant's knowledge of drug trafficking and previous arrests.

6. Trial counsel failed to object when the State on cross examination asked appellant about a past conviction for resisting arrest and about three past convictions for misdemeanor possession of marijuana.

7. Trial counsel failed to timely object to the introduction of appellant's arrest for possession of 4.4 grams of cocaine subsequent to appellant's arrest in this present cause. Trial counsel further failed to request for a limiting instruction concerning the matter.

8. Trial counsel mentioned in its closing statement that appellant had a long record and had been to jail for drug offenses a "zillion" times.

### A. Standard of Review

The U.S. Supreme Court established a two prong test to determine whether counsel is ineffective at the guilt/innocence phase of a trial. First, appellant must demonstrate that counsel's performance was deficient and not reasonably effective. Second, appellant must demonstrate that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Essentially, appellant must show (1) that his counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms, and (2) that there is a reasonable

probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id; Hathorn v. State,* 848 S.W.2d 101, 118 (Tex.Crim.App.1992). A reasonable probability is defined as probability sufficient to undermine confidence in the outcome. *Miniel v. State,* 831 S.W.2d 310, 323 (Tex. Crim.App.1992).

Judicial scrutiny of counsel's performance must be highly deferential. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* An ineffectiveness claim cannot be demonstrated by isolating one portion of counsel's representation. *McFarland v. State,* 845 S.W.2d 824, 843 (Tex.Crim.App. 1992). Therefore, in determining whether the *Strickland* test has been met, counsel's performance must be judged on the totality of the representation. *Strickland,* 466 U.S. at 670, 104 S.Ct. 2052. The defendant must prove ineffective assistance of counsel by a preponderance of the evidence. *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App.1984).

In any case analyzing the effective assistance of counsel, we begin with the presumption that counsel was effective. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim.App.1994) (en banc). We assume counsel's actions and decisions were reasonably professional and that they were motivated by sound trial strategy. *Id.* Moreover, it is the appellant's burden to rebut this presumption via evidence illustrating why trial counsel did what he did. *Id.* In *Jackson,* the court of criminal appeals refused to hold counsel's performance deficient given the absence of evidence concerning counsel's reasons for choosing the course he did. *Id.* at 772; *see also Jackson v. State,* 973 S.W.2d 954, 956–957 (Tex.Crim.App.1998) (inadequate record on direct appeal to evaluate that trial counsel provided ineffective assistance).

## B. Application

 Appellant did not file a motion for a new trial, and therefore failed to develop evidence of trial counsel's strategy. *See Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd) (generally, trial court record is inadequate to properly evaluate ineffective assistance of counsel claim; in order to properly evaluate an ineffective assistance claim, a court needs to examine a record focused specifically on the conduct of trial counsel such as a hearing on application for writ of habeas corpus or motion for new trial); *Phetvongkham v. State*, 841 S.W.2d 928, 932 (Tex.App.-Corpus Christi 1992, pet. ref'd, untimely filed) (inadequate record to evaluate ineffective assistance claim). *See also Beck v. State*, 976 S.W.2d 265, 266 (Tex.App.-Amarillo 1998, pet. ref'd) (inadequate record for ineffective assistance claim, citing numerous other cases with inadequate records to support ineffective assistance claim).

In the present case, the record is silent as to the reasons appellant's trial counsel chose the course she did. The first prong of *Strickland* is not met in this case. *Jackson*, 973 S.W.2d at 957; *Jackson*, 877 S.W.2d at 771. Due to the lack of evidence in the record concerning trial counsel's reasons for these alleged acts of ineffectiveness, we are unable to conclude that appellant's trial counsel's performance was deficient. *Id.*

 Even if this record rebutted the *Strickland* presumption of sound trial strategy, appellant has not affirmatively shown that trial counsel's performance prejudiced the defense. We find that appellant was not harmed by the actions of his trial counsel. We also find that the evidence of appellant's guilt was overwhelming. Appellant has not shown a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Therefore, appellant has not met the second prong of the *Strickland* test.

Because appellant produced no evidence concerning trial counsel's reasons for choosing the course he did, and because appellant did not demonstrate prejudice to his defense, we overrule appellant's contention in point of error three.

For the reasons stated in this opinion, the judgment of the trial court is AFFIRMED.

WITTIG, Justice, concurring and dissenting.

"And how can they believe if they have not heard the message? And how can they hear the message if it is not proclaimed? And how can the message be proclaimed if the messengers are not sent out? As the scripture says, 'How wonderful is the coming of the messengers who bring good news.' "[1] Similarly, Exodus records the small cry of a baby boy answered by Pharaoh's daughter[2] which inexorably leads to the freedom of an entire Nation.

### Background

Ernest Davis was walking down Brewster Street one night when Houston Police threw a spotlight on him. Because the police said he threw down a clear container, he was arrested for littering, searched, a container seized; with two enhancements, he now serves ten years in the penitentiary for possession of less than 1 gram of cocaine. After the remarkable beginning of this story, appellant was then denied the opportunity of making an opening statement in *his* trial. Today I first examine the harmful nature of the trial judge's baseless denial of the rudimentary right and historical common law tradition of the opening statement. Then I will briefly address the police seizure. I concur in the result reached by the majority on the effectiveness of counsel issue al-

1. *See Romans* 10:14–15

2. *See Exodus* 2: 6

though trial counsel was rendered ineffective by the denial of appellant's right to make an opening statement.

## I. Opening Statement

### A. Standard of Review

The majority correctly observes the clear error of the trial court in denying the statutory and common law right to make an opening statement. We diverge on the harm analysis. Under our rules of appellate procedure, this harm analysis must begin with a determination of whether the denial of the right to make an opening statement is constitutional error. TEX. R.APP.P. 44.2.[3] This issue was seemingly foreclosed in *Moore v. State*, 868 S.W.2d 787, 789 (Tex.Crim.App.1993). There the court held the right to make an opening statement is a statutory right, not a constitutional right[4]. Accordingly, we are charged to perform harm analysis under Tex.R.App.P. 44.2(b). See *Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App.1997). Under this appellate standard, reversal is required only if the defendant's substantial rights were adversely affected. The question thus becomes whether the right to make an opening statement is a substantial right as applied in this case.

Under *Cain*, the factors that the court should consider in determining whether error was harmless include (1) source of error; (2) nature of error; (3) whether or to what extent it was emphasized by State; (4) error's probable collateral implications; (5) how much weight juror would probably place on error; and (6) whether declaring error harmless would encourage the State

to repeat it with impunity. *Macias v. State*, 959 S.W.2d 332, (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd).

### B. Harm Analysis.

**1. Source of Error.** The trial court is the source of the error. The State argues waiver because the defense counsel's objection was not specific enough and failed to preserve for review the content of the statement he desired to make. In order to preserve error, an adverse ruling on an objection must be obtained in the trial court. TEX.R.APP.P. 33.1; *Chappell v. State*, 850 S.W.2d 508, 510 (Tex.Crim.App. 1993); *Lewis v. State*, 664 S.W.2d 345, 349 (Tex.Crim.App.1984). A formal bill of exception is not required to preserve error when the defense is denied the right to make an opening statement. *Crew*, 387 S.W.2d at 899. The appellant here obtained an adverse ruling from the trial court and specifically stated his objection, therefore, he preserved error. The nature of the error was made clear to the judge who could have timely corrected the error. Nothing more was required of the defense attorney to preserve error.

**2. Nature of Error.**

#### Practicalities

The practicalities of the opening statement are numerous. Eliminating even some of these prerogatives injures every litigant, State or the individual. In the opening statement the advocate completes the limited introductions of voir dire and states the logic of his position.[5] Counsel outlines the theme of her case, discusses

---

**3.** Rule 44.2 provides:
(a) Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt the error did not contribute to the conviction or punishment.
(b) Other Errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

**4.** It is noted the court did not discuss Article I, Section 10 of the Texas Constitution which provides an accused "shall have the right of being heard by himself or counsel, or both."

**5.** *See* Tom Riley, *The Opening Statement: Winning at the Outset*, 10 AM. J. OF TRIAL ADVOC. 81–82 (1987).

legal concepts and applicable principles such as burden of proof, presumption of innocence, and reasonable doubt.[6] Rather than presenting the prosecution or defense in a kaleidoscope fashion, by bits and pieces, the opening statement is the first opportunity to present the whole picture in a logical sequence.[7] The logical sequence is described by Johnny Cochran in *People v. Simpson* as a roadmap.[8] Gerry Spence in *Silkwood* described the opening as the picture of the completed jigsaw puzzle; "the picture on the box is what the puzzle will look like when it is all put together."[9] The issues may be simplified, narrowed, and presents a shortcut to educating jurors.[10] The advocate disabuses the jury of false issues raised by her opponent or existing in the conventional wisdom. As a professional communicator, the advocate may not always fire the "magic bullet" insuring victory in this opening salvo, but at least he can take a shot at the minds and hearts of the jurors, and not be muzzled by the court. Minimally the significance of the evidence to be adduced can be discussed [11] and credibility issues highlighted. Appellant has clearly been substantially harmed by the denial of these opportunities.

The opening statement represents an indispensable one third of an effective trial lawyer's opportunity to advocate his client's case directly to the jury. Like the three legged stool, removing the center pillar destroys balance and the presentation's structural integrity.

Discussing the significance of evidence and important issues gives the remainder of the advocate's case focus, meaning and content. The contextual opening, like a topic sentence, introduces, illuminates and sets the stage. The opening "hooks" the jury, thus to catch their interest and predispose them to counsel's case.[12] This exordium works to make the listener take heed and prepare them for what will follow.[13] The right to make an opening statement is thus a "critical part of the trial." [14] The whimsical disallowance of the opening statement abates logic, context and the roadmap until final argument when the case is all but over. Appellant has clearly been substantially harmed by the denial of these opportunities.

### Psychological

A study by the University of Chicago School of Law found liability questions were answered consistent with initial impressions of the jurors after opening statements eighty percent (80%) of the time.[15] Most attorneys believe up to 80% of jurors make up their minds about a case after opening statements and do not change their minds.[16] Psychologists maintain up to 80% or more of jurors irrevocable make up their minds after opening.[17] Whether or not the opening statement reaches such

**6.** I have been privileged to witness great opening statements both as advocate and trial judge. One such opening statement by the famous trial lawyer Lawrence McQuown of New York, so persuasively and powerfully influenced a tough U.S. Marine Corps Courts Martial at Quantico, Va. that a prima facie murder one case was reduced to involuntary manslaughter. (The opening statement was logically intertwined with the closing for maximum effect.)

**7.** *See* Riley at 82, 87.

**8.** *See* L. Timothy Perrin, *From O.J. to McVeigh: The Use of Argument in the Opening Statement*, EMORY L. J., Winter 1999, 107 n. 21.

**9.** *Id.* at n. 20.

**10.** *See* Riley at 83.

**11.** *Id.* at 85.

**12.** *See* Perrin at n. 12.

**13.** *Id.*

**14.** *Id.* at n. 10.

**15.** *See* Riley at 82.

**16.** *See* Perrin at 107; *Cf.* n. 104 (80% challenged by Hans Zeisel).

**17.** *Id.* at n. 104.

heights of efficacy, the primacy principle remains. "The first thought, the first image, the first argument, the first word you hear is the one that has the most profound impact." [18] What we hear first colors our thinking, commits us and is heavily outcome determinative .[19] Appellant has been clearly and substantially harmed by the denial of the opportunity to speak before jurors make up their minds.

## Legalities

At the conclusion of the State's case appellant's attorney requested that he be allowed to make a short opening statement prior to putting on evidence in appellant's case in chief. The trial judge denied appellant's attorney the right to make an opening statement stating that, "Since it wasn't made by the state, you can't make one, I think one follows the other, as I understand the law." Appellant's attorney stated that he was entitled to an opening statement. The trial judge responded that the defense is only entitled to an opening statement if the State makes an opening statement. Appellant's attorney then objected on the record to not being allowed an opening statement in appellant's case in chief. The trial court overruled the appellant's attorney's objection

Historically, the right to make an opening statement has been held to be a valuable right. *Caraway v. State*, 417 S.W.2d 159, 161 (Tex.Crim.App.1967); *Kennedy v. State*, 150 Tex.Crim. 215, 200 S.W.2d 400, 407 (1947)(op. on reh'g); and, *Price v. State*, 167 Tex.Crim. 105, 318 S.W.2d 648 (1958). In Texas, this valuable right is derived both from the common law and the Code of Criminal Procedure, specifically Art. 36.01. *Moore v. State*, 868 S.W.2d 787, 789 (Tex.Crim.App.1993). The practice of making opening statements is irrefutably grounded in the common law and "followed from time immemorial." *See Dugan v. State* 82 Tex.Crim. 422, 199 S.W. 616, 616, 617 (Tex.Crim.App.1917). Article

36.01 sets out the order of proceeding in any criminal action involving a jury and provides that a defendant's opening statement *shall* be made after the presentation of the State's evidence. *Id.; Atkinson v. State*, 523 S.W.2d 708, 710–11 (Tex.Crim. App.1975). By creating Article 36.01 the legislature makes it evident that the right to make an opening statute is not only a valuable right but also a right dictated by the legislature in mandatory language.

Because historical precedent has established the substantial value of the opening statement and the right is patently mandatory, appellant's substantial rights were affected. Thus the error cannot be deemed harmless. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). A conviction should not be overturned for such error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim.App.1998). The United States Supreme Court has construed the nearly identical federal harmless error rule as follows:

> If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, *or if*

---

**18.** *Id.* at n. 106.　　　　**19.** *Id.*

*one is left in grave doubt,* the conviction cannot stand.

*O'Neal v. McAninch,* 513 U.S. 432, 437–38, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (emphasis in original) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *see also Lopez v. State,* 990 S.W.2d 770 (Tex.App.—Austin 1999, no pet.); *Reeves v. State,* 969 S.W.2d 471, 491 (Tex.App.—Waco 1998, pet. ref'd).

**3. Whether or to What Extent Error was Emphasized by the State.** Appellant's attorney did not have the chance to make an opening statement at the hearing. Because of the nature of the error, it was not emphasized by the State in this instance. As noted *infra* however, the State has successfully urged this self same error upon the trial court in other cases. *See McGowen v. State,* 944 S.W.2d 481 (Tex.App.—Houston [14th Dist.] 1997). *vacated and remanded,* 991 S.W.2d 803 (Tex.Crim.App.1998).

**4. Error's Probable Collateral Implications.** To rule that the denial of defendant's right to present an opening statement is not reversible error would effectively repeal the express mandatory language of Art. 36.01 of the Code of Criminal Procedure. "It is the duty of the court to administer the law as it is written, and not to make law . . ." *Turner v. Cross,* 83 Tex. 218, 18 S.W. 578, 579 (1892). The legislature is constitutionally entitled to expect that the judiciary will faithfully follow the specific text that was adopted. *Boykin v. State,* 818 S.W.2d 782, 785, (Tex. Crim.App.1991). In divining legislative intent, we look first to the language of the statute. When the meaning is plain, we look no further. *State v. Daugherty,* 931 S.W.2d 268, 270 (Tex.Crim.App.1996); *Dowthitt v. State,* 931 S.W.2d 244, 258 (Tex.Crim.App.1996); *Boykin,* 818 S.W.2d at 785. We focus on the text of the statute and interpret it in a literal manner to discern a fair, objective meaning of the text. *State v. Mancuso,* 919 S.W.2d 86, 87 (Tex.Crim.App.1996). When a court interprets a statute, it is "obliged to implement the expressed will of our legislature, not the will it keeps to itself." *State v. Johnson,* 939 S.W.2d 586, 587 (Tex.Crim.App. 1996) (quoting *Garcia v. State,* 829 S.W.2d 796, 799 (Tex.Crim.App.1992)). "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed and it is not for the courts to add to or subtract from such statute." *Coit v. State,* 808 S.W.2d 473, 475 (Tex.Crim.App.1991) (quoting from *Ex parte Davis,* 412 S.W.2d 46, 52 (Tex.Crim. App.1967) (op. on reh'g)).

Judicial conservatism dictates that the courts should interpret and implement the law, not make laws or repeal laws enacted by the legislative representatives of the people. *See Zinger v. State,* 932 S.W.2d 511, (Tex.Crim.App.1996). We could rule that in the case before us the denial of the right to make an opening statement amounted to harmless error. In order to make such a judgment, we would first have to believe that the denial of an opening statement would virtually never render the trial unfair, including the denial of the prosecution's right to open. Second, we would have to overrule considerable and long standing case law. Third, we would have to amend Art. 36.01. And fourth, we would elevate an appellate rule, promoting it to decimate or trump a substantial statutory and common law right.

First, jury trials cannot be expected to function fairly if a judge has discretionary authority to deny counsel for the state of the defense the right to make an opening statement. Second, we should be constrained not accept the suggestion that we abandon a consistent line of judicial interpretation dating back at least back to 1904 holding that denying defense counsel the right to make an opening statement is reversible error. Judges and lawyers alike are familiar with the law on this subject, and there has been no serious argument to our knowledge that it be changed by judicial interpretation. Stare decisis dictates that we adhere to precedent and not disturb a settled principle of

law. *McGlothlin v. State*, 896 S.W.2d 183, 188–89 (Tex.Crim.App.1995). Third, it is not within our authority to amend a statute. Article 36.01 of the Code of Criminal Procedure is plain in its meaning. To render harmless a trial court's violation of Art. 36.01 would be to substantially involve this Court in the legislative process contrary to article II of the Texas Constitution, which requires a separation of powers in government. Fourth, and perhaps most profoundly, no criminal court in this state may abridge, enlarge or modify the substantive rights of a litigant by new appellant rule 44.02. *See Lyon v. State* 872 S.W.2d 732, 735 (Tex.Crim.App.1994). Here the government unabashedly seeks to diminish the substantive and mandatory statutory right of appellant to make an opening statement.

**5. How Much Weight Juror Would Probably Place on the Error.** Normally, the ability to perform a meaningful harm analysis under any standard depends upon whether the record provides enough information for the reviewing court to gauge the effect of the error. An opening statement wrongfully denied is obviously not in the record. However, grave doubts abound that the denial of appellant's ability to make an opening statement had no effect on the outcome of the proceeding. We must remember that counsel has the "right" to speak to the jury on only three occasions: voir dire, opening statement and closing argument. After examining the record as a whole, I cannot say with fair assurance that the error did not influence the jury, or had but a slight effect.

This is more emphatically apparent as applied to our facts. The defendant took the stand and directly contradicted the State's case. Appellant claims the microscopic amount of cocaine was planted by a police officer who had it in for him. The defense theory was corroborated by two witnesses and the fact appellant was spotlighted for no apparent good reason, while simply walking the streets of Houston. The defense was even corroborated in part

by the police testimony he had seen appellant "around," implying familiarity. This hotly contested case clearly turned on credibility. The defense was stripped of appellant's right to inform the jury, create the road map, narrow, simplify. and illuminate the jury. Instead of allowing the opening statement, appellant was forced, without any advance warning or introduction, to immediately start testimony diametrically opposed to what the jury just heard from the "man in blue uniform." It is difficult to imagine a more strained defense, than to be coerced to throw up either the defendant or a defense witness without setting the stage for the direct onslaught of any police person. On the heels of polished police testimony, without segue or explanation, a layman starkly contradicts the police.

**6. Whether Declaring Error Harmless Would Encourage the State to Repeat it with Impunity.** The decision to deny opening statements was made by the trial court. As such, one could argue it is not amenable to repetition by the State because here the State did not urge the error upon the trial court. However in the case of *McGowen, supra,* the government invited the trial court into error by erroneously objecting to the defense's proffered opening statement. The trial court sustained the State's spurious objection, thus resulting in the same denial of the accused's right to make an opening statement as in the case *sub judice.* Further, to hold this error harmless would encourage the government into the growing bastardization of the law by the too familiar argument: "It is harmless error, your Honor." Of even greater moment declaring the error harmless would encourage and enable the trial court to repeat the error with impunity.

Harm analysis clearly demonstrates that the denial of a timely request to present an opening statement is the denial of a substantial right, and constitutes reversible error. I would reverse and remand the case for a new trial.

## II The Motion to Suppress

From a distance of *ten (10) feet*, Officer Dillingham froze appellant with a police spotlight. Appellant instantly stopped his walk, threw his hands in the air, and awaited further police instruction. According to Dillingham, a small vial containing a trace of cocaine was discarded by appellant when Dillingham shown his bright beam upon appellant. Officer Dillingham offered nothing more than some inarticulate hunch as justification for stopping this person. Therefore: 1. There was no reasonable suspicion to detain, based on the totality of the circumstances. *See Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App.1997); and 2. A reasonable person would believed he was not free, would yield to a show of authority, and physical force was used to limit his movement. Thus a seizure occurred. *See California v. Hodari,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

The State cites *Stewart v. State,* 603 S.W.2d 861, 862 (Tex.Crim.App.1980), as authority for the spotlight stop. The contention is without merit. In *Stewart,* on routine patrol Nacogdoches police observed a van and auto parked at the end of a dead end street near a home construction site. There were no other homes. When the officers approached the darkened van, they shown their light, the occupants got out, and the police smelled marihuana. As the court duly noted: "The police did not stop Stewart. The van was already stopped. Stewart got out of the van without being requested to do so." *Id.* So then the State cites *Merideth v. State,* 603 S.W.2d 872, 873 (Tex.Crim.App. 1980). There a 3 a.m. call to police prompted investigation into an area of frequent burglaries. Officer Kocik saw a stopped auto and because he could not see in the window, knocked at the car door. Once again the court noted this is no stop. When Merideth opened his door, the officer smelled marihuana. Then by his flashlight the officer saw a hand rolled butt as well as a smoky haze to complement the marihuana smell. The contrast between our case and the clearly articulated facts in *Stewart* and *Merideth* serve to illustrate how far our modern courts are sliding to emasculate constitutional protections. It is difficult to understand why this court will put its stamp of approval on indiscriminate police seizure of citizens walking our Houston streets. To argue a police spotlight in your face from ten feet is not detention, is to say the smell of the barn from ten feet downwind is roses.

I would sustain appellant's issue on the motion to suppress.